**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MALIBU MEDIA, LLC<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOE subscriber assigned to IP Address 24.14.81.195,<br><br>Defendant. | Case No. 1:13-cv-06312<br><br>The Hon. Thomas M. Durkin |
| **MOTION TO COMPEL PURSUANT TO FED. R. CIV. P. 37** | |

NOW COMES Doe 24.14.81.195, ("Doe") by and through counsel, Jonathan LA Phillips, who moves this Honorable Court for an Order Compelling the Plaintiff, Malibu Media, LLC, ("Malibu") to comply with the Federal Rules of Civil Procedure and to respond to appropriately issued discovery requests. In support of the same, Doe states:

**I. Local Rule 37-1**

Lead counsel for Doe, Jonathan LA Phillips, has repeatedly attempted, in good-faith, to reach opposing counsel via telephone for a discussion to resolve the current dispute. Doe framed the issue in a written letter, and then repeatedly attempted to reach opposing counsel for personal consultation regarding the same. To date, Doe has received no response of any kind despite Attorney Schulz, in the mean time, issuing discovery in this case and filing at least six new cases[1] for Malibu. A list of such communications is as follows:

| Date/Time | Method | Supporting Document |
|---|---|---|
| 1/2/14 \| 2:15 PM | Letter explaining position on each objection sent to Attorney Schulz by email. Letter informed Attorney Schulz when to expect call. | Exh. A. |
| 1/3/14 \| 1:30 PM | Scheduled telephone call to Attorney Schulz. Voicemail left. | Referred to |

---

[1] 14-cv-0076, 0077, 0081, 0082, 0083, and 0085.

1

| | | |
|---|---|---|
| | | in Exh. B |
| 1/3/14 \| 1:45 PM | Email follow up to telephone call to Attorney Schulz. Set a new time for call and asked for notice if the time was not convenient. | Exh. B. |
| 1/6/14 \| 1:30 PM | Scheduled telephone call to Attorney Schulz. Voicemail left. | Referred to in Exh. C. |
| 1/6/14 \| 1:34 PM | Email follow-ups to telephone call to Attorney Schulz. Set new time for call and asked for notice if the time was not convenient. Email referenced severe weather and offered one additional call. Second email noted that Attorney Schulz was able to serve discovery, but would not take discovery dispute calls. | Exh. C. |
| 1/7/14 \| 10:13 AM | Telephone call to Attorney Schulz. No voicemail left due to the fact that no voicemail picked up. | Referred to in Exh. D |
| 1/7/14 \| 10:20 AM | Email follow up to Attorney Schulz discussing no voicemail pickup, and inviting a call back. | Exh. D. |

Doe's counsel's attempts to engage in good-faith consultation to resolve the discovery dispute were unsuccessful through no fault of Doe or his counsel.

## II. Introduction

This discovery dispute has arisen as a part of Malibu's serial failure to make any attempt to move this case forward.[2] The discovery requests consisted, primarily, of different means to get at the same necessary information: (a) the data collected by its admitted expert witness, IPP International UG – for liability issues; and (b) the distribution of proceeds from settlement/judgments only in the "swarms" that Doe allegedly participated in – for damage issues. Malibu has objected to this discovery, for a variety of reasons. Malibu's objections occur throughout the responses. See, Exhs. E, F. Because Malibu has refused to confer regarding the issue, despite its "Statements of Willingness to Cooperate," this Motion will attempt to efficiently address all of the objections.

## III. Governing Law

A. Liberal Discovery Rules

---

[2] Indeed, Malibu's counsel failed to comply with the Court's Order of October 25, 2013 as well. ECF Doc. 12. Accordingly, Doe was forced to file his own initial status report, not a joint one, and his own proposed discovery plan. ECF Docs. 20, 20-1.

2

Under Rule 37, a party may move to compel discovery where another party is being evasive or failing to respond to a discovery request. Fed. R. Civ. P. 37(a)(3)-(4). Courts have typically adopted liberal interpretation of the discovery rules. *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006); *see also Cannon v. Burge,* 2010 WL 3714991, at *1 (N.D. Ill. Sept. 14, 2010) ("The federal discovery Rules are liberal in order to assist in trial preparation and settlement."). Courts look negatively on significant restrictions being placed upon discovery, and the burden is upon the objecting party to show why a particular request is improper. *Kodish*, 235 F.R.D. at 450.

B.  "Control" of documents

Rule 34(a) requires the disclosure of those documents in a respondents "possession, custody, or control." Fed. R. Civ. P. 34(a). The phrase is disjunctive, requiring only a single element to be met. *Cumis Ins. Society, Inc. v. South-Coast Bank,* 610 F.Supp. 193, 196 (N.D. Ind. 1985); *see also Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995) (holding actual possession of documents is not required under Rule 34(a)). Litigants are entitled to discover any reasonably accessible electronically stored information that could lead to admissible evidence. Fed. R. Civ. P. 26(b)(1)(B). "Control is defined as the legal right to obtain document on demand." *FTC v. Braswell*, No. CV 03-3700-DT(PJWx), 2005 U.S. Dist. LEXIS 42817, at *8 (C.D. Cal. Sept. 26, 2005). Control, when concerning discovery, is to be broadly construed, including whether there is the ability to obtain documents. *New York ex re. Boardman v. Nat'l R.R. Passenger Corp.,* 233 F.R.D. 259, 268 (N.D.N.Y. 2006); *see also, Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000)(holding that "control" does not require ownership, just the ability to obtain a document on demand). Even documents in other countries are discoverable. *Novelty, Inc. v. Mt. View Mktg, Inc.*, 265 F.R.D. 370, 377 (S.D. Ind. 2009).

C.  Confidentiality

> Many a litigant would prefer that the subject of the case – how much it agreed to pay for the construction of a pipeline, how many tons of coal its plant uses per day, and so on – be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing.

*Union Oil Co. of Cal. v. Dan Leavell*, 220 F.3d 562, 567 (7th Cir. 2000). Judge Easterbrook went on to say "People who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with subsidized dispute resolution . . ." *Id.* at 568. "Judicial proceedings are public rather than private property." *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 27-29 (1994). In another intellectual property case, the Seventh Circuit stated that "[D]ocuments that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy. . . " *In re Sprecht*, 622 F.3d 697, 701 (7th Cir. 2010).

**IV. Application**

Malibu's responses to the following are inadequate due to a failure to respond, evasiveness, or unfounded objections: Interrogatories 1, 3, 4, 5, 6, 7, and 8; Requests to Produce 1, 2, 3, 4, 5, and 7. For some of the Requests to Produce – namely 1 and 3, Malibu simply has not turned over the documents it already stated it would.[3]

    A.    The wholesale refusal to disclose relevant information due to
           alleged confidentiality or unduly burdensome[4] compliance is unfounded

Malibu repeatedly refuses to turn over information regarding IPP International UG's investigation of Doe, and "other peer infringers," due to burden and confidentiality concerns. Such objections are unfounded, and fly in the face of the law.

        i.    IPP's & Malibu's compensation

---

[3] This delay is particularly troublesome in cases, such as this, that have seen numerous Rule 11 issues creep up. The delay in providing information, even when insufficient to respond fully, suggests that the documents may have never been reviewed by counsel.

[4] To properly frame the issue of burden, it is important to remember that Malibu has chosen to litigate in hundreds of cases to protect its rights rather than explore cheaper and more cost effective methods of protecting its intellectual property, e.g. Digital Millennium Copyright Act take down notices to Doe's ISPs as utilized by other content providers.

IPP International UG is a "fact witness" who is being paid pursuant to an "oral contingency fee agreement." Exh. E, p. 2, Resp. 1. No reason is provided why IPP's compensation information is confidential. In fact, to allow an expert witness's fees to not be released would deprive the jury of the ability to judge credibility. Further, Malibu has not provided any proposed protective order, even if it were protectable. With no reason provided, Malibu has refused to disclose the percentage, or amount of proceeds, it will receive from this case.

With regards to confidentiality of it's proceeds from cases involving the same peer infringers as disclosed in its Rule 26(a) disclosures, Malibu objects, stating, "Each of the settlement agreements contains a confidentiality clause which prohibits Plaintiff from disclosing the doe defendant's name and the terms of the Agreement." Exh. F, p. 3, Resp. 4. Malibu complains that disclosure would "spawn an avalanche of irrelevant litigation." *Id.* Doe's defense against a $3.6 million dollar suit simply cannot be handicapped by agreements that Malibu made with third-parties. Further, Malibu's settlement agreements are unenforceable under Seventh Circuit law and contrary to public policy. *Union Oil Company of Cal.*, 220 F.3d at 567 ("Calling a settlement confidential does not make it a trade secret, any more than calling an executive's salary confidential would require a judge to close proceedings if a dispute erupted about payment. . . ."). If there truly needs to be an avalanche of litigation, Malibu is simply having to lie in the bed it has made.

    ii.    Hash correlation information

Malibu refuses to produce information regarding other peer infringers and information as to activities in the complained of "swarms"[5] for two reasons. First, it is alleged that such production is unduly burdensome due to, essentially, sloppy record keeping on Malibu's part. However, this information about other participants in the swarm is not just relevant, but necessary, to bring and

---

[5] While the current Complaint does not define swarms, previous Malibu complaints define a swarm as a group of computers, identified by the hash number, that work in an interdependent nature to assist in BitTorrent protocol file transfers. *See, e.g. Malibu Media, LLC v. Does 1, 13, 14*, Amended Comp., ¶ 12 (ECF Doc. 47) (filed Nov. 2, 2012).

prove both liability and damage defenses. In fact, Malibu has admitted the same, naming "other peer infringers," i.e. those in the swarms complained of, as having discoverable information. See, Exh. G, p. 2.

With regards to the information being unduly burdensome, Malibu has chosen to sue an individual for $3.6 million dollars. See Exh. H, p. 3, Resp. 10. It is no fault of Doe's that Malibu has sued thousands of people in well over 1,500 suits in just a few years. It certainly is not Doe's fault that Malibu keeps sloppy records – possibly purposefully. Regardless of the state of its records, Malibu is able to easily search its filings – which it would have in searchable format – for the particular hash values. Accordingly, by searching for certain hash values; Malibu could easily pull each case that an "other peer infringer" was sued. Having the case number in hand, Malibu could then correlate the case to activities within the swarms, settlement amounts, judgments, and otherwise. Having done so, it could provide the requested information.

Instead, Malibu asserts that Doe, an individual of limited means, should search a non-official repository of information (RFC Express), download well over 1,000 dockets of information, engage in massive amounts of computing time and effort to make it searchable, and then conduct searches that will not even produce the majority of the documents requested. Exh. F, p. 5, Resp. 2. The allegation that this process is as easy, or easier than Malibu simply searching its records and correlating cases to hash numbers is a fantastical claim. Exh. E, p. 3, Resp. 3. Such a response and objection is inappropriate when Malibu already has the information it in its possession, and can simply answer the question posed with minimal effort.

All of this information is relevant, not just to try to analyze data relating to liability issues, but also for the purpose of setting statutory damages.[6] Malibu has said other peer infringers have discoverable information, so the objection that this request "would not lead to the discovery of admissible evidence" is false, deceptive, evasive, and patently inappropriate.

                iii.        Malibu books and records & financials of Malibu

Further, Malibu has only been in existence for three years. Objections regarding the production of books and records are unfounded. Less than three years of financials is not unduly burdensome. There is no authority or explanation why these documents are trade secrets. In fact, this position flies in the face of *Union Oil*. More importantly though, the banking records sought <u>relate only to those banking records where settlements are deposited</u>. Thus the concerns as to how much Malibu pays its "models" and vendors are completely unfounded.

        B.        <u>The "smoking gun" held by its contingent fee expert witness/investigator<br>Is within the control of Malibu and must be turned over</u>

Malibu has sued Doe, and thousands of other people, many of whom are undoubtedly innocent, based upon the swarm activity to IP address correlations as allegedly uncovered by IPP. In fact, IPP, International U.G., of Hamburg, Germany, "possesses information regarding the detection and reporting of the alleged infringement," and is to be a witness. Exh. G., p. 1. If anything, this case is similar to another alleged piracy case wherein the plaintiffs in that action successfully compelled the production of third-party server log data. *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443 (C.D. Cal. 2007). The only difference regarding "control" in that case and the one at bar is that the defendant was using servers and the third-party was not a controlled expert witness being paid a contingency fee to provide a smoking gun for early discovery.

---

[6] While Malibu argues, extensively about how this information is irrelevant as to actual damages, it fails to provide a modicum of authority why the Court should not consider the information if it were to assess statutory damages. Exh. E, p. 3 – 5, Resp. 4.

When asked to turn over documents regarding the investigation by IPP, Malibu simply "avers that it does not <u>have</u> any other documents" that relate to the use of the case other than limited, mostly useless, and yet to be provided PCAP files. Exh. F, p. 1, Resp. 1 (emphasis added). Despite Doe's denials, Malibu has repeatedly stated that it thinks Doe infringed because of the IP address correlation. Yet, Malibu refuses to provide documents backing up this claim, because it does not "have" the document sought. In fact, the information is in "IPP International UG's possession." Exh. E, p. 5, Resp. 6. Malibu does not aver that it does not "control" the information of its admitted contingency fee expert witness. Malibu would apparently have thousands of doe defendants pay its expert witness to get information to defend themselves when Malibu simply has to give IPP a – yet unknown – portion of the proceeds of the suit.

Even if Malibu had to pay for the documents, a point not conceded, it still must comply with discovery. The Rules presume that Malibu will be paying to respond to the discovery. Fed. R. Civ. P. 26(b)(2). Malibu does not attempt to argue that the documents are not readily accessible due to "undue burden or cost," through anything more than an unsupported allegation of the same. Malibu most certainly does not, and cannot, argue any of the cost-shifting factors set forth in the Advisory Comments. Fed. R. Civ. P. 26, Comm. Notes on Rules – 2006 Amendment; *see*, *Haka v. Lincoln Cnty.*, 246 F.R.D. 577 (W.D. Wis. 2007) (applying cost-shifting factors). Finally, with Malibu's refusal to cooperate in the filing of the discovery plan, as ordered, and continued failure to attempt to provide input regarding the same, Malibu has waived any objection regarding costs of producing documents. See, ORDER (ECF Doc. 12) ("The parties must file a joint initial status report with the content described in Judge Durkin's website . . . " which includes a proposed discovery plan.[7])

---

[7] http://www.ilnd.uscourts.gov/home/_assets/_documents/webdocs/durkin/Initial%20Status%20Report.pdf

Rather than turnover the information controlled by Malibu and needed for Doe's defense, Malibu suggests that Doe just look to the "Bellwether Trial" to learn that IPP's techniques are sound. However, that particular trial was not a full trial, had no cross examination of experts, and involved only Defendants who committed perjury, spoiled evidence, or simply admitted to the downloads. *Malibu Media LLC v. Does 1-22*, Case No. 5:12-cv-02088-MB (E.D. Penn.). Doe does not have to, and would be foolhardy to, rely upon an uncrossed expert who is paid pursuant to a contingent fee agreement. Doe should, and has the right to, thoroughly examine the alleged evidence that was used to drag him this litigation.

C. <u>Other Malibu positions refuted</u>

The information sought is not for the purposes of harassment or to aid in execution of a judgment, as indicated above. Additionally, no privilege log was provided for those documents said to be protected. Finally, information as to the first dates of infringement is relevant in ascertaining whether or not statutory damages are even available.

**V. Conclusion**

For the foregoing reasons, it is respectfully requested that this Honorable Court:

A. Order Malibu Media, LLC to respond to the discovery requested – namely, Interrogatories 1, 3, 4, 5, 6, 7, and 8 and Requests to Produce 1, 2, 3, 4, 5, 7 – without objection within seven days;

B. Order Malibu Media, LLC or Attorney Schulz to pay the costs of bringing this Motion, including attorney's fees, as authorized by Federal Rule of Civil Procedure 37(a)(5); and

C. Any other relief the Court deems just and equitable.

Respectfully submitted,

/s/Jonathan LA Philips
Jonathan LA Phillips
One of Doe's Attorneys

9

456 Fulton St.
Ste. 255
Peoria, IL 61602
309.494.6155
jphillips@skplawyers.com
ARDC No. 6302752

Table of Exhibits

| Exhibit | Description |
|---|---|
| A | Letter explaining position on each objection sent to Attorney Schulz by email. Letter informed Attorney Schulz when to expect call. |
| B | Email follow up to telephone call to Attorney Schulz. Set a new time for call and asked for notice if the time was not convenient. |
| C | Email follow-ups to telephone call to Attorney Schulz. Set new time for call and asked for notice if the time was not convenient. Email referenced severe weather and offered one additional call. Second email noted that Attorney Schulz was able to serve discovery, but would not take discovery dispute calls. |
| D | Email follow up to Attorney Schulz discussing no voicemail pickup, and inviting a call back. |
| E | Plaintiff's Responses to Defendant's First Set of Interrogatories |
| F | Plaintiff's Responses to Defendant's First Set of Requests to Produce |
| G | Plaintiff's Fed. R. Civ. P. 26(a) Disclosures |
| H | Plaintiff's Response to Defendant's Firt (sic) Set of Request for Admissions |

**Certificate of Service**

I certify that on January 7, 2014 a copy of the foregoing has been filed with the Clerk of the Court via the Court's ECF filing system, thereby serving it upon all counsel of record.

/s/ Jonathan LA Phillips