```
                    UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF PENNSYLVANIA


MALIBU MEDIA, LLC,              )   12-cv-2078
                                )
          Plaintiff,            )
                                )
     vs.                        )
                                )
JOHN DOES 1, 13 and BRIAN       )
WHITE,                          )   Philadelphia, PA
                                )   June 10, 2013
          Defendants.           )   9:28 a.m.



                     TRANSCRIPT OF BENCH TRIAL
              BEFORE THE HONORABLE MICHAEL M. BAYLSON
                   UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiff:        CHRISTOPHER P. FIORE, ESQUIRE
                          FIORE & BARKER LLC
                          425 Main Street - Suite 200
                          Harleysville, PA   19438

                          MICHAEL KEITH LIPSCOMB, ESQUIRE
                          LIPSCOMB HEISENBERG & BAKER PL
                          2 South Biscayne Boulevard
                          Penthouse 3800
                          Miami, FL   33131

For the Defendants:       RONALD A. SMITH, ESQUIRE
                          RONALD A. SMITH AND ASSOCIATES
  White                   1617 JFK Boulevard - Suite 1240
                          Philadelphia, PA   19103

  John Doe #1             LEONARD J. FRENCH, ESQUIRE
                          THE LAW OFFICES OF LEONARD J. FRENCH
                          1022 Main Street
                          Bethlehem, PA   18108

  John Doe #13            A. JORDAN RUSHIE, ESQUIRE
                          MULVIHILL & RUSHIE LLC
                          2424 East York Street Suite -316
                          Philadelphia, PA   19125
```

# EXHIBIT C

2

```
Audio Operator:        KELLY HAGGERTY

Transcribed by:        DIANA DOMAN TRANSCRIBING
                       P.O. Box 129
                       Gibbsboro, New Jersey  08026-0129
                       Office:  (856) 435-7172
                       Fax:     (856) 435-7124
                       E-mail:  dianadoman@comcast.net
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1  THE COURT: Okay.
2  THE WITNESS: We -- I don't want to cause financial
3  damage, hardship, to anyone. I want --
4  THE COURT: Well, let me ask you another question.
5  Have you ever considered selling the right to
6  enforce your copyrights to a third party --
7  THE WITNESS: Never.
8  THE COURT: -- so -- so-called copyright troll?
9  THE WITNESS: Never.
10 THE COURT: You've never. Okay.
11 THE WITNESS: Never.
12 THE COURT: All right. Thank you. All right.
13 MR. LIPSCOMB: Now, Mr. Fiore has one or two --
14 THE COURT: All right. Thank you.
15 MR. LIPSCOMB: -- two questions.
16 THE COURT: All right. Next witness.
17 MR. FIORE: Good morning, Your Honor. I'd like to
18 call Tobias Fieser.
19 TOBIAS FIESER, PLAINTIFF'S WITNESS, SWORN
20 THE CLERK: Please be seated and state your full
21 name and spell your last for the record.
22 THE WITNESS: Tobias Fieser, F-I-E-S-E-R.
23                     DIRECT EXAMINATION
24 BY MR. FIORE:
25 Q   Good morning, Mr. Fieser. How are you?

1　A　Good. Fine.

2　Q　Mr. Fieser, where did you go to high school?

3　A　Bruchsal, Germany.

4　Q　Can you spell that for us?

5　A　B-R-U-C-H-S-A-L.

6　Q　Okay. Where did you attend after high school?

7　A　I study business informatics (phonetic) at the
8　(inaudible) till 2010.

9　Q　And where did you work after college?

10　A　I worked for two different IT departments and joined IPP
11　in 2011.

12　Q　What are your primary responsibilities at IPP?

13　A　I've got three primary functions. The first is to -- to
14　verify the downloaded movies from the BitTorrent network. The
15　second is to send the infringement data to the law firms after
16　they were requested, and the third is to check the
17　declarations I get back from the law firms and the
18　infringement data that's attached by the declarations.

19　Q　Okay. So as I understand it, your first -- your first
20　duty is you've got to verify that the original work of your
21　client is the same as the BitTorrent that has been downloaded.

22　A　Correct.

23　Q　Okay. The second part is then you have to send that data
24　to your client or the client's attorney.

25　A　Correct, yes.

1  Q    And then the third step is you then have to verify that
2  the information that -- that they have sent you in the
3  declaration is true and accurate, based upon your records.
4  A    Correct, yes.
5  Q    Okay. Let's talk about each one of these functions.
6       Did you look at the movie files that were transmitted
7  through BitTorrent which are at issue in this suit?
8  A    Yes.
9  Q    Okay.
10          MR. FIORE: Your Honor, for the record, P-7 has
11 already been admitted into evidence. I'd like to approach the
12 witness with this.
13          THE COURT: Yes.
14 BY MR. FIORE:
15 Q    Mr. Fieser, do you recognize this -- this piece of
16 evidence?
17 A    Yes.
18 Q    Can you tell me what it is?
19 A    Important for me, it's the downloaded movies are on it.
20 Q    Okay. So it's a 500 gigabyte hard drive --
21 A    Yes.
22 Q    -- and on it is the BitTorrent copy of all the movies at
23 issue here.
24 A    Yes.
25 Q    Okay. Have you looked at those?

1   A   Yes.
2   Q   Okay. What -- what's contained on there?
3   A   Copies of the original movies --
4   Q   How -- what --
5   A   -- from Malibu Media.
6   Q   What type -- what type are the files?
7   A   They are in lot of different types. Most -- most used
8   are dot mre, dot re, dot mp4.
9   Q   For our purposes is it okay if I refer to them as movie
10  files?
11  A   Yes, of course.
12          MR. FIORE: Your Honor, P-7 has already been moved
13  into evidence. Now we have a document which has been marked
14  as P-8. May I approach?
15          THE COURT: Yes.
16  BY MR. FIORE:
17  Q   Mr. Fieser, do you under -- do you recognize the exhibit
18  that I have in front of you marked P-8?
19  A   Yes.
20  Q   Can you tell me what that is?
21  A   On the USB drive are the original movie files from Malibu
22  Media.
23  Q   Okay. So on P-8 is the original of each one of Malibu
24  Media's at issue in this case.
25  A   Yes.

1  Q   On seven is the BitTorrent copy of each one of those.
2  A   Yes.
3          MR. FIORE: Your Honor, I move for admittance of P-8
4  into evidence.
5          THE COURT: All right. It's admitted.
6  BY MR. FIORE:
7  Q   Mr. Fieser, do you recognize this document which is
8  marked P-9?
9  A   Yes.
10 Q   What is this document?
11 A   On the document you can see the correlation between
12 the -- the hash values and the downloaded movie, Torrent
13 files, to the movie which -- which are original from Malibu
14 Media. You can correlate it.
15 Q   Okay. So column one has the original movie from Malibu
16 Media, each movie under each Doe with the infringement,
17 correct?
18 A   Correct.
19 Q   Column two is the BitTorrent copy of each one of the
20 ones -- each one of the movies for each one of the Does.
21 A   Correct.
22 Q   Who created this document?
23 A   I.
24 Q   Okay. Did you watch all the movies in column one of this
25 exhibit?

1  A   Yes.

2  Q   Did you watch all the movies in column two?

3  A   Yes.

4  Q   If I were to ask you to plug in P-7, would all the
5  original movies be -- would all the BitTorrent movies be
6  there?

7  A   Yes.

8  Q   And if I asked you to plug in P-8, all the copies -- I'm
9  sorry, all the originals are on P-8, all the copies are on P-
10 7.

11 A   Yes.

12 Q   Okay.

13          MR. FIORE:  Your Honor, I move to admit P-9 into
14 evidence.

15          THE COURT:  Okay.

16          MR. LIPSCOMB:  What's P-9?

17          THE COURT:  What is P-9?

18          MR. FIORE:  P-9 is the document that Mr. Fieser has.

19          THE COURT:  All right.  That's the summary.

20          MR. FIORE:  Correct.

21          THE COURT:  Okay.

22 BY MR. FIORE:

23 Q   Mr. Fieser, did you verify that the movies associated
24 with the movie files were copy of Malibu Media's works prior
25 to filing the lawsuit?

1　A　Yes.
2　Q　How did you do that?
3　A　I looked original movie on the -- I split my computer
4　　　screen into two parts. On the right side I have the original
5　　　movie from Malibu Media, and on the left side I have got the
6　　　copy as downloaded movie file from the BitTorrent network, and
7　　　then I checked if they are the same.
8　Q　Did anyone else at IPP, Limited, verify that the movies
9　　　were copies of Malibu Media's works prior to filing the
10　　　lawsuits?
11　A　Yes, Dan Macek also verified the movies.
12　Q　Okay. That's Daniel Macek, M-A-C-E-K?
13　A　Yes.
14　Q　Okay. Why --
15　A　C for -- C?
16　Q　C, yes.
17　A　Okay. Sorry.
18　Q　Why did two of you do it?
19　A　Because it's necessary.
20　Q　Necessary from whom?
21　A　The system, yes --
22　Q　Okay.
23　A　From the system of IPP.
24　Q　Okay. So IPP requires at least two of you watch the
25　　　movies.

1  A   Yes.
2  Q   Okay. And for Malibu Media's works are you and Daniel
3  the only employees of IPP that verify that the originals and
4  the BitTorrents are copies?
5  A   Yes.
6  Q   In your -- one of your previous answers we talked about
7  your job responsibilities, and you said your second job
8  responsibility was to send the infringed work to your client
9  or to the client's law firm, correct?
10 A   Correct.
11 Q   How does that happen? Tell me how that works.
12 A   The law firms contact me and say would be -- that I send
13 to them the data, the infringement data, and then I export it
14 from our database and send it to the law firms.
15 Q   Okay. After you send it to the law firms, what happens
16 with regard to you next?
17 A   The law firm send back me the declarations, and the
18 data -- infringement data divided per Doe, and then I checked
19 the data if they are correct, and if they are correct, I sign
20 the declarations.
21 Q   So you get the declaration which is used to file the
22 motion for leave to serve third party subpoena.
23     You get the infringed data back from the law firm, and
24 you check all that against your company's saved data with
25 regard to each infringement.

1  A    Yes.
2  Q    Okay.  At that point if it's okay, you sign the
3  declaration?
4  A    Yes, sir.  If not -- if --
5  Q    Do you understand in this case that these cases were
6  severed, correct?
7  A    Correct.
8  Q    And you understand that Malibu Media filed amended
9  complaints which alleged that defendants committed all the
10 infringement works which the copies -- which are on IPP's
11 database, correct?
12 A    Correct.
13       MR. FIORE:  Your Honor, may I approach?
14       THE COURT:  Yes.
15 BY MR. FIORE:
16 Q    This document was previously marked as P-10.
17      Do you recognize that document?
18 A    Yes.
19 Q    And what is this document?
20 A    This are the infringement data I get back from the law
21 firms.  You can see on it the hash value, the title, the owner
22 and the date.
23 Q    Did you verify that this information correlated to the
24 information that you had, and that it was accurate?
25 A    Yes.

1  Q    And tell me, how do you do that?
2  A    I got one document from the law firm, copied the data in
3  it into Excel sheet, then pulled the Excel sheet into a tool
4  from IPP.
5       This tool checks each one. If they are truly the same as
6  in our database and if the -- if it's really the same, I got a
7  green light on my screen, and then -- and then it's correct.
8  Q    Okay. So I understand, you get the infringed data and
9  the information back from a law firm. You -- you put it into
10 an Excel spreadsheet.
11      You then put the Excel spreadsheet into IPP's software
12 which verifies that everything is an exact copy of each other.
13 If that's correct, you get a red light -- excuse me, correct,
14 you get a green light. If it's inaccurate, you get a red
15 light.
16 A    Yes.
17 Q    Okay. And you did that with each piece of document in
18 P -- piece of document -- each piece of the exhibits that's in
19 front of you right now.
20 A    Yes.
21 Q    And what light did you get on each piece of those
22 documents?
23 A    Green.
24 Q    Okay. From the --.
25           MR. FIORE: Your Honor, we move for Exhibit 10 to be

Fieser - Direct (Fio) 101

1  admitted into evidence.
2  THE COURT: Yes, admitted.
3  BY MR. FIORE:
4  Q   Mr. Fieser, how many works, the copyright of which are
5  owned by Malibu Media, does Exhibit 10 state that John Doe 1
6  infringed?
7  A   Four.
8  Q   Okay. How many different unique works does the
9  copyrights which are owned by Malibu Media does Exhibit 10
10 state that John Doe 13 infringed?
11 A   Thirty-seven.
12 Q   Did Malibu Media have a registration for all 37 of those
13 works?
14 A   No, only for 35.
15 Q   Only 35. So then how many registered works of Malibu
16 Media did John Doe 13 infringe upon?
17 A   Thirty-five.
18 Q   Okay.
19        THE COURT: How many?
20        THE WITNESS: Thirty-five.
21        THE COURT: Thirty-five.
22 BY MR. FIORE:
23 Q   And how many different works, the copyright of which are
24 owned by Malibu Media, does Exhibit 10 state that Brian White
25 infringed upon?

Fieser - Direct (Fio) 102

1  A   Five.
2              MR. FIORE:  I have no further --
3              THE COURT:  How many?
4              THE WITNESS:  Five.
5              MR. FIORE:  -- questions, Your Honor.
6              THE COURT:  Five?
7              THE WITNESS:  Five, yes.
8              MR. FIORE:  I have no further questions, Your Honor.
9              THE COURT:  All right.  Cross examine, any --
10 Counsel?
11             UNIDENTIFIED ATTORNEY:  No, Your Honor.
12             UNIDENTIFIED ATTORNEY:  No, Your Honor.
13             THE COURT:  Okay.  All right.  Thank you.  You may
14 step down.
15             THE WITNESS:  Thank you.
16             MR. FIORE:  Your Honor, at this point I would like
17 to read a few stipulations into the record.
18             THE COURT:  Okay.
19             MR. FIORE:  They will be marked at and admitted into
20 evidence, as well.
21             Your Honor, marked as P-11 is the stipulation
22 between the parties with regard to John Doe 16.  Stipulation
23 reads:
24             "This stipulation is made on this 23rd day of April
25     2013 by and between Malibu Media, LLC and defendant John

1  Doe 16.
2      "Now, thereafter, the parties through their
3  respective counsel stipulate:
4      Verizon identified John Doe 16's wife as a
5  subscriber of IP address number 96.245.250.242 on
6  February 14th, 18th and 19th of 2012 and March 17, 2012.
7  The subject IP address was assigned to another person on
8  March 29, 2012. The technology used by Verizon to
9  correlate the IP address to John Doe 16's wife on the
10 above-referenced dates is reliable.
11     "Number two, this stipulation shall be admissible at
12 trial. It is so stipulated."
13     And it is executed by Ronald Smith and by M. Keith
14 Lipscomb.
15     We move for Plaintiff's 11 to be admitted into
16 evidence.
17     THE COURT: All right. That'll be admitted. Well,
18 you have an exhibit number?
19     MR. FIORE: P-11.
20     THE COURT: P-11. All right. Thank you.
21     MR. FIORE: Your Honor, P-12 is another stipulation
22 with regard to John Doe 13. This stipulation states:
23     "I, Doe 13, through my counsel, hereby stipulate
24     that I was assigned IP address 76.99.88.237, and that
25     Comcast correctly correlated the IP address to me.

1    "Further, I stipulate to the entry of this
2    stipulation into evidence at trial. I also stipulate to
3    the entry into evidence of the subpoena response provided
4    by Comcast identifying me as the owner of the above IP
5    address at the time of the infringement.
6    "Further, I stipulate that plaintiff is the owner of
7    the copyrights, and that plaintiff may introduce into
8    evidence a website printout of the United States
9    Copyright Office of the applicable applications, and that
10   these website printouts have the same evidentiary
11   presumption as the certified copies issued by the
12   register of copyrights."
13   Executed May 9, 2013 by counsel for John Doe 13 and
14   move for the admittance of P-12 into evidence.
15   THE COURT: All right. Admitted.
16   (Pause)
17   MR. FIORE: Next, Your Honor, having marked as
18   Plaintiff's 13 is a stipulation with regard to John Doe 1.
19   The stipulation reads:
20   "This stipulation is made on this 4th day of June
21   2013 by and between Plaintiff, Malibu Media, LLC, and
22   defendant John Doe 1.
23   "Now, therefore, the parties, through their
24   respective counsel, stipulate: One, Comcast identified
25   John Doe 1 as a subscriber of IP address number

1  174.60.32.79 on December 16, 2011 and December 22, 2011.
2  The technology used by Verizon to correlate the IP
3  address to John Doe 1 in the above-referenced dates is
4  reliable.
5      "This stipulation shall be admissible at trial."
6      It is executed by M. Keith Lipscomb and Leonard
7  French.
8      This document was -- is document 177 on the docket,
9  Your Honor.
10     Document 178 is a notice of scrivener's error
11 because in the body of that it starts talking about a Comcast
12 correlation and, by mistake, it lists the word "Verizon." The
13 scrivener's error corrects the "Verizon" to "Comcast."
14     THE COURT:  Right.
15     MR. FIORE:  Collectively, this is P-13, Your Honor.
16 We move to admit P-13.
17     THE COURT:  Admitted.
18     MR. FIORE:  Those are the stipulations, Your Honor.
19 Right now, with the consent of all counsel, I would like to
20 read in an excerpt from the deposition of Colin Padgett, who
21 is a representative of Comcast, whose deposition was
22 previously taken in this matter.
23     THE COURT:  Okay.
24     MR. LIPSCOMB:  You need me to play the witness,
25 right?