**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MALIBU MEDIA, LLC<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOE subscriber assigned to IP Address 24.14.81.195,<br><br>Defendant. | Case No. 1:13-cv-06312<br><br>The Hon. Geraldine S. Brown |

---

**DOE'S RESPONSE TO:**
**PLAINTIFF'S SECOND AMENDED MOTION TO SEAL ITS MOTION FOR PROTECTIVE ORDER PURSUANT TO THE COURT'S ORDER OF 4/22/2014 (ECF DOC. 72)**

---

I.   **Introduction & relevant procedural history**

The litigation process should fundamentally be open and transparent. The Seventh Circuit is cognizant of this fact, and has routinely opted ensure such transparency. The fact of the matter is that Malibu provided this Court (and opposing counsel) with information to convince it to enter an order. Malibu got what it wanted, but doesn't want anyone to know why. Such a position is untenable in the Seventh Circuit.

Malibu Media, LLC brought a Motion for a Protective Order, which included a so-called "fact"[1] section that accused a wide variety of people of a wide variety of things. Indeed, the Motion went as far as to unjustly accuse Doe's counsel of various misdeeds and misbehavior. *See,* ECF Doc. 72-1, pp. 3, 5, 6 (suggesting what is in the "facts" section of the Motion). Malibu, of its own volition, and without being forced to do so, brought "facts" to influence this Court. After twice attempting to keep its Motion out of the view of the very citizens that subsidize its litigation-business model, it has, again, thumbed its nose at the Court. In open court, Your Honor informed counsel for

---

[1] It should go without saying that Doe, and his counsel, disagree with the purported "facts" and Malibu's inferences and conclusions from the same. The failure to rebut them individually should not be construed as an acceptance of the same.

Malibu that it would not enter an order sealing the Motion with the "facts" section fully redacted; yet, that is just what Malibu requests for a third time. Malibu did not use the opportunity provided to tailor its Motion, but rather, to dig up non-applicable authority for its position.

## II. Law

There may not be more succinct way to explain the state of the Seventh Circuit's position on sealed litigation documents than to quote Judge Easterbrook.

> The tradition that litigation is open to the public is of very long standing. . . . People who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials. Judicial proceedings are public rather than private property.

*Union Oil Co. v. Leavell*, 220 F.3d 562, 567-568 (7th Cir. 2000) (internal citations omitted). The entire purpose of open litigation is to enable those people who are interested, *e.g.* other lawyers, journalists, and government officials, to know who is using the courts and to monitor the courts' performance. *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013).

## III. Application

### A. Malibu brought this case, and the Motion, not Doe

To begin with, it is important to note that Malibu brought this case, and over 2,100 other similar cases across the country; not Doe. Doe did not sue Malibu; Doe is being unjustly dragged through costly and embarrassing litigation. More importantly, Malibu brought the Motion that it wishes to seal; not Doe. Malibu revealed purported confidences and purportedly private information; not Doe. Doe did not cause anything to "cre[e]p[] into the record." *See, Goesel,* 738 F.3d at 833. Malibu purposefully inserted it into the record. Malibu wants the world to know that this Motion is sealed, but does not want anyone – other defense attorneys, journalists, bloggers, or even academia to know why. This is improper, and violative of the letter and spirit of Seventh Circuit precedent.

      B.     Malibu has failed to point to anything "private," all
           <u>complained of information is publicly available</u>

Secondly, it is respectfully noted that the entire "fact" section is based upon information that is publicly available on the Internet. Before going further, it is preeminently important to note that neither Doe, nor his counsel, believes threats of violence or harassment are appropriate in any situation – let alone litigation. That being said, Malibu, its owners, its agents, and otherwise, have all elected to make information publicly available.

A review of the "facts" section will indicate that the information is all publicly available. The information does not appear to be commercially sensitive or trade secret information. Essentially, Malibu would have this Court take information that *it* put into the marketplace of ideas, and remove it from the public sphere.

      C.     Attorneys, journalists, and academics
           <u>may wish to review the Motion</u>

Malibu complains that it has essentially mis-stepped in its litigation-business model campaign. That is, it revealed, purportedly, important information, that it intends to use later, to obtain a relatively modest Model Protective Order. (ECF Doc. 72, p. 1). It admits that it provided information for the purpose of "demonstrate[ing] the need for a protective order," and therefore, to influence the Court; but the information provided, if public, would impair the ability to enforce its rights. *Id.* Malibu's missteps cannot serve to deny the public its right to monitor this docket. As noted in the *Goesel* case, many different individuals have an interest in monitoring Court proceedings. 738 F.3d at 833. Malibu forgets that it is not just those it purportedly fears will harass it that may want to review its Motion, but also a journalists, academics, attorneys, and others.

It is also worth noting that Malibu's accusations are similar to that of another copyright litigation-business model participant, Prenda Law. While Doe has avoided drawing parallels between Malibu and Prenda, as they are different companies with different counsel, some of their

techniques are unquestionably similar. For example, in *AF Holdings, LLC v. Rajesh Patel,* the Plaintiff sought to have future filings sealed because the case had "generated much unneeded attention on the internet." *Pltf's 2d Motion for Protective Order with Motion to Quash and Motion to Seal*, Case No. 2:12-cv-00262-WCO (ECF Doc. 60, ¶ 9) (N.D. Ga. Aug. 13, 2013). That court rightfully denied the request. Order, *AF Holdings, LLC v. Rajesh Patel* , Order, Case No. 2:12-cv-00262-WCO (ECF Doc. 90, p. 8) (Embarrassment and "misleading characterizations" do not merit any limitation on the "common-law right of access to judicial proceedings."), *citing Romero v. Drummond Co.*, Inc., 480 F.3d 1234, 1245 (11th Cir. 2007).

Malibu has filed over two thousand cases across the country. It has coordinated its efforts through a central firm handling the bulk of the work and strategy, with local counsel following orders. Surely other defense counsel, attorney-commentators, and possibly even other mass-Doe copyright plaintiffs may wish to review the filing in order to ascertain the nation-wide strategy. Ignoring for a moment that bloggers have been judicially recognized to be part of protected news media, Malibu's, and others', business-litigation campaigns have attracted the attention of traditional news media. *Obsidian Fin. Group, LLC v. Cox*, 740 F.3d 1284, 1291 (9th Cir. 2014). In the way of example, and only for the last month, traditional news media have covered Malibu and others in:

- Slind-Flor, V, *Microsoft, Lacoste, Malibu Media: Intellectual Property,* Bloomberg News (April 8, 2014) (discussing Malibu's purported use of polygraph tests), *available at*, http://www.bloomberg.com/news/2014-04-09/microsoft-lacoste-malibu-media-intellectual-property.html;
- MacFarlane, S, Yarborough, R, *Adult Film Company Accuses Hundreds of Illegal Porn Downloads*, NBC News4 – Washington (discussing Malibu Media's 200 suits in Maryland) (Apr. 25, 2014), *available at* http://www.nbcwashington.com/investigations/Adult-Film-Company-Accuses-Hundreds-of-Illegal-Porn-Downloads-256578021.html;
- Mullen, J., *Porn site that spews copyright suits uses lie detectors on defendants*, ArsTechnica (April 7, 2014) (discussing Malibu Media's alleged use of polygraph tests), available at, http://arstechnica.com/tech-policy/2014/04/porn-site-that-spews-copyright-suits-uses-lie-detectors-on-defendants/;
- Pipitone, T, Esquivel, S, *Porn company sues thousands claiming copyright infringement*, NBC News 6 – Miami (May 4, 2014) (discussing a defendants whose forensic investigator

showed no infringement occurred), *available at*, http://www.nbcmiami.com/news/local/Porn-Company-Sues-Thousands-Claiming-Copyright-Infringement-257869461.html; and

- Parker, L, *Movie studios targets consumers for illegal downloads*, NBC News 5 – Chicago (May 2, 2014) (discussing Dallas Buyer's Club LLC cases filed in the Northern District of Illinois and even interviewing bloggers complained of), available at, http://www.nbcchicago.com/investigations/Movie-Studio-Targets-Consumers-For-Illegal-Downloads-257608961.html.

There can be no doubt then, that Malibu's litigation campaign, and its activities therein, e.g. polygraph tests, have become public concerns across this country. Surely the facts contained in a motion for a protective order that accuses so-called "hate groups" of harassing it may be of interest to the public at large.

Additionally, academia certainly has taken note of Malibu's activities, and may wish to review its *modus operandi*. For example, Professor Matthew Sag has authored a paper entitled *Copyright Trolling, an Empirical Study,* which has been accepted for publication in the Iowa Law Review. Sag, M., *Copyright Trolling, an Empirical Study* (Mar. 21, 2014) (forthcoming Iowa L. Rev) (discussing the misapplied current status-based definitions of "copyright troll" and Malibu's litigation tactics). Other scholars have likewise discussed Malibu Media, having apparently reviewed dockets. Curran, L, *Copyright trolls, defining the line between legal ransom letters and defending digital rights,* 13 J. Marshall Rev. Intell. Prop. L. 170 (2013) (discussing Malibu's litigation tactics), *available at*, http://repository.jmls.edu/ripl/vol13/iss1/5/.

Finally, and perhaps most importantly, the public at large has the right to determine why Your Honor granted the motion that Malibu wishes to have sealed. Regardless of if any individual is interested in Malibu, he or she may be interested in the workings of this courtroom, of the Northern District, or the Seventh Circuit. Malibu's fears of disseminating a fact section culled from publicly available information cannot serve to deny all of the above groups of people their rights to observe these proceedings.

D.     Malibu has waived its privileges,
       forfeiting the right to keep secrets regarding
       <u>select statements it disseminated</u>

It would appear that if there was any attorney-client privileged or work-product privileged information in Malibu's motion, which has been waived.  Malibu chose to disclose information for the purpose of influencing this Court.  It chose to disclose the information to this Court, which sits in the Seventh Circuit, with the knowledge that the Motion could not remain sealed under binding precedent.  It should go uncontroverted, if the privilege is waived, there is no reason to conceal Section "E" from the public's eye.

To begin with, Malibu complains that the information it disclosed "is *based upon* conversations between Plaintiff and its counsel." (ECF Doc. 72, p. 5).  It does not say that it *is* the communication.  This may be potentially argued to be work-product.  However, Malibu has waived both the work-product and attorney-client privileges with respect to this information.  Malibu has intentionally, and purposefully, in order to influence this Court, decided to disclose information to the potential public "in a manner which substantially increases the opportunity to obtain the information." Doing so waives the work-product privilege, if one exists.  *Vardon Golf Co. v. Karsten Mfg. Corp.,* 213 F.R.D. 528, 534 (N.D. Ill. 2003).

Malibu *intentionally* disseminated the information, disclosing it to opposing counsel, and potentially, the public through filing with the Court.  This waives the attorney-client privilege.  Fed. R. Evid. 502.  This was no inadvertent disclosure.  Despite having three attempts to explain its position, Malibu has put forth no compelling argument that no waiver occurred.  This is because the position is untenable.  Indeed, using communications between client and counsel to gain advantage in litigation waives attorney-client privilege.  Just as in *Beneficial Franchise Co. v. Bank One, N.A.,* Malibu is putting forth information from its counsel to gain advantage in this litigation.  205 F.R.D.

212 (N.D. Ill. May 9, 2001). Just as in this case, the Court should find that such behavior waives the attorney-client privilege. *Id.* at 218.

Malibu appeals to the "selective waiver theory" as discussed in *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,* 244 F.R.D. 412, 432 (N.D. Ill. 2006). That theory, in that case, only applied to work-product, not attorney-client privilege. Even if it did apply, *Pension Plan* is categorically distinguishable from the matter at hand. The *Pension Plan* case involved the turnover of documents to a government agency, not to opposing counsel and the potential public. *Id.* The entirety of its discussion and logic centers on that fact. *Id.*, *generally.* Its reasoning and conclusions are not applicable to the situation at hand.

Even were it not distinguishable, the *Pension Plan* case explicitly notes, "courts in this district have not viewed [the selective waiver theory] with particular favor." *Id.* at 432. Indeed the Seventh Circuit has even noted that courts typically reject this theory. *Dellwood Farms Inc. v. Cargill,* 128 F.3d 1122, 1127 (7th Cir. 1997) (finding non-waiver due to inadvertence – not the situation in the case at bar). Malibu cannot protect information based on privileges it has waived.

   E.    Malibu's cannot seal this case for
         fear of spoliation in future cases

Malibu states that Section "E" contains information regarding future legal actions. (ECF Doc. 72, p. 6). When, or if, it will take those actions is unknown. Further exploring its interrogation-like tactics, such as the polygraph tests that traditional media has picked up on, *supra*, Malibu now makes analogies to search warrants. *Id.* Considering the fact that Malibu intends to bring the actions, it is safe to assume they will civil in nature – and accordingly, the use of search warrants would not be available. Thus, the risk of spoliation remains the same; there will be no surprise.

Further, it would be manifestly against public policy to allow Malibu to play hide the ball in this case in order to protect future cases that may never be brought. Malibu's desire to litigate in

shadows and behind curtains cannot be protected because it hasn't pounced on its next defendant, *yet*.

### IV. Conclusion

For the foregoing reasons, it is respectfully submitted that the Court deny Malibu's motion.

Respectfully submitted,

/s/Jonathan LA Philips
Jonathan LA Phillips
One of Doe's Attorneys
456 Fulton St.
Ste. 255
Peoria, IL 61602
309.494.6155
jphillips@skplawyers.com
ARDC No. 6302752

| Certificate of Service |
| --- |

I certify that on May 5, 2014 a copy of the foregoing has been filed with the Clerk of the Court via the Court's ECF filing system, thereby serving it upon all counsel of record.

/s/ Jonathan LA Phillips