**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MALIBU MEDIA, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN DOE subscriber assigned IP address ) <br> 24.14.81.195, ) <br> ) <br> Defendant. ) <br> ) | Civil Action Case No. 1:13-cv-06312 |

**PLAINTIFF'S MOTION FOR THE ENTRY OF A PROTECTIVE ORDER**

i

**TABLE OF CONTENTS**

I.   FACTS ............................................................................................................................1

   A.   The Internet Hate Group Uses Illegal Extrajudicial Tactics In Coordination With Opposing Counsel ..............................................................................................................1

      1.   Physical Threats ............................................................................................2

         a.   The Internet Hate Group Threatened to Kill Plaintiff's Principal And An Attorney....2

         b.   **[REDACTED]**..........................................................**Error! Bookmark not defined.**

      2.   Cyber-Stalking And Harassment ..................................................................3

         a.   The Internet Hate Group Cyber-Stalks and Harasses Plaintiff and Its Counsel ...........3

         b.   Plaintiff's Counsel Received a Threat Aimed at His Church Youth Group.................3

         c.   Every Person is Targeted ..............................................................................4

      3.   Opposing Counsel and The Internet Hate Group Are Attempting Invoke the Government's Criminal Powers to Stop Plaintiff From Enforcing Its Copyrights And By Doing So Are Inciting Violence Against Plaintiff ...................................................5

      4.   Internet Defamation and Tortious Interference .............................................7

      5.   Opposing Counsel Is A Key Member Of the Internet Hate Group ...............8

II.   LEGAL STANDARD .....................................................................................................9

      A.   The Public Does Not Have a First Amendment Right to See *Discovery* Materials; The Government Has a Substantial Interest in Protecting Privacy and Reputation 10

III.   ARGUMENT.................................................................................................................10

   A.   Plaintiff's Privilege Log Should Be Protected ................................................10

   B.   Plaintiff's Financial Records Should Be Protected..........................................11

   C.   Plaintiff's Agreement With IPP Should Be Protected .....................................12

   D.   Plaintiff Requests That Discovery Be Managed Tightly ..................................13

   E.   **[REDACTED]** ................................................................**Error! Bookmark not defined.**

   F.   Plaintiff Requests The Court Enter The Model Confidentiality Order Form At L.R. 26.2 15

IV.   CONCLUSION..............................................................................................................15

# **TABLE OF AUTHORITIES**

*Baker v. Buffenbarger*, 03-C-5443, 2004 WL 2124787 (N.D. Ill. Sept. 22, 2004) ...................... 14
*Crissen v. Gupta*, 2013 WL 5960965 (S.D. Ind. Nov. 7, 2013) .................................................. 14
*Directory Concepts, Inc. v. Fox*, 2008 WL 5263386 (N.D. Ind. 2008) ....................................... 15
*Galella v. Onassis,* 487 F.2d 986 (2d Cir. 1973) ........................................................................ 13
*Hobley v. Chicago Police Commander Burge,* 225 F.R.D. 221 (N.D. Ill. 2004) ........................ 12
*Malibu Media v. John Doe*, 13-cv-00435, (S.D. Cal. Nov. 14, 2013) ........................................... 9
*Malibu Media, LLC v James Helferish*, 1:12-cv-00842 (S.D. In., June 18, 2012) ....................... 9
*Malibu Media, LLC v. Kelley Tashiro*; 1:13-cv-00205 (S.D. In., February 5, 2013) .................... 9
*Methodist Hospitals, Inc. v. Sullivan,* 91 F.3d 1026, 1031 (7th Cir. 1996) ................................. 14
*Nieves v. OPA, Inc.*, 948 F.Supp.2d 887 (N.D. Ill. 2013) .......................................................... 12
*Patterson v. Burge*, 2007 WL 433066,*2 (N.D. Ill. 2007)........................................................... 12
*Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74-75 (7th Cir. 1992) ................................................. 14
*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984) ....................................................... 12, 13

Pursuant to Fed.R.Civ.P. 26(c), Plaintiff moves for the entry of a protective order in the form of N.D. Ill. L.R. 26.2's Model Confidentiality Order and a separate sealed order preventing opposing counsel from talking about the contents of this Motion with anyone.

## I.     FACTS

Plaintiff is the target of a fanatical Internet hate group. The hate group is comprised of BitTorrent users, anti-copyright extremists, former BitTorrent copyright defendants and a few attorneys. Opposing counsel is one of its few members. Indeed, as *shown* below, opposing counsel communicates regularly with the hate group's leader. Members of the hate group physically threaten, defame and cyber-stalk Plaintiff as well *everyone* associated with Plaintiff. Their psychopathy is criminal and scary.

By administering and using the defamatory blog www.fightcopyrighttrolls.com, "Sophisticated Jane Doe" ("SJD") leads the hate group. SJD is a former defendant is a suit brought by another copyright owner. *See* Ex. A. She is a self-admitted BitTorrent copyright infringer.[1] SJD's dedicates her life to stopping peer-to-peer infringement suits.

### A.     The Internet Hate Group Uses Illegal Extrajudicial Tactics In Coordination With Opposing Counsel

The Internet hate group attempts to intimidate Plaintiff from exercising its right to sue for copyright infringement by using four tools: (1) threats of physical violence; (2) cyber-stalking and harassment; (3) threats of criminal prosecution; and (4) internet defamation and tortious interference. The threats of criminal prosecution and internet defamation emanate from both non-attorney bloggers *and* two attorneys, including opposing counsel in this case.

---

[1] She admitted the infringement on her blog but has since deleted it.

1

1. <u>Physical Threats</u>

   a. <u>The Internet Hate Group Threatened to Kill Plaintiff's Principal And An Attorney</u>

The night Plaintiff won the Bellwether trial, Brigham and Colette Field, Plaintiff's principles, were Tweeted by X-Art Destroyer, *inter alia*: "My life is dedicated to destroying you sickoes, pedophile enablers. I have nothing to lose – you do." *See* Ex. B-1. "You never had an enemy so dedicated in ur life, prepare to lose ur beauty in one swift acid splash. ive got cancer nthg to lose." *Id.* "dying is not fun." *Id.* The Fields sought protection and advised Judge Baylson. *Field Dec.* at ¶3, Exhibit J. Significantly, SJD has used numerous similarly pejorative pseudonyms to Tweet Colette Field. *Id.* at ¶4. Each time SJD uses a new pseudonym, Ms. Field blocks her Twitter handle. *Id.* at ¶5. In addition to rotating through pseudonyms, SJD copies Ms. Field's Tweets and comments on her blog and Twitter about them. *Id.* at ¶7. Significantly, SJD Tweeted Ms. Field on her birthday: "Birthday is a natural time to think about death . . . you will be remembered as an extortionist." Plaintiff's attorney has also received numerous death threats. *Lipscomb Dec.* at ¶4, Exhibit K.

   b. **[REDACTED]**

**[REDACTED]**

2

2. <u>Cyber-Stalking And Harassment</u>

a. <u>The Internet Hate Group Cyber-Stalks and Harasses Plaintiff and Its Counsel</u>

SJD *constantly* cyber-stalks Plaintiff's principle. *Field Dec.* at ¶6. If Ms. Field tweets or posts her location, or a picture from which her location can be ascertained, SJD will Tweet it and post it. *Id.* at ¶8. The week of February 2, 2014, a stalker stared at Ms. Field for more than hour at a restaurant. *Id.* at ¶9. Ms. Field called the police. The stalker was removed from the restaurant. *Id.* at ¶10. Ms. Field then pretended to be out of the country. *Id.* at ¶11. SJD posts Plaintiff's principal's *home address* to the Internet hate group. *See* Ex. B-5.



Further inciting violence, SJD describes Plaintiff's principals as greedy scumbags and uses other curse words and pejoratives to harass Plaintiff *and* its attorneys.



b. <u>Plaintiff's Counsel Received a Threat Aimed at His Church Youth Group</u>





In December 2013, SJD tweeted Plaintiff's Colorado counsel: "Sorry I did not have a chance to write to your pastor. Will do as soon as I sort out things of higher priority." *See* Ex. B-6. Days later she tweeted: "pseudo-christian scumbag @jaaronkotzker opened new extortion cases in CO yesterday . . ." *See* Ex. B-7.

3

Previously, SJD *traveled to Mr. Kotzker's church* and posted a picture of it. *See* pic on p.6 and Ex. B-8. Then SJD tweeted a picture of Mr. Kotzker with his youth group asking him how they would feel knowing he represents child pornographers. *See* Ex. B-9.




SJD also regularly attacks Mr. Lipscomb's religious beliefs and she has accused Mr. Lipscomb of being bought off by Satan. *See* Ex. C-1. SJD's tweets have caused other members of the hate group to post on Mr. Lipscomb's church's bulletin. *See* Composite Ex. C.



c. <u>Every Person is Targeted</u>

SJD has a page on her blog dedicated to each of Plaintiff's counsel. *See* Composite Ex. D. Each page contains defamatory statements such as "Mafiosio family," "Bastardize" and "Criminal Mastermind." SJD also posts links to counsel's Facebook and LinkedIn web pages. *Id.* SJD uses search engine optimization techniques to ensure these defamatory statements rank high on internet search results. *See* Ex. B-10. Last month SJD emailed undersigned about *this* case. *See* Ex. B-11. Previously, SJD sent defamatory and offensive emails to undersigned with mysterious attachments and links. This month, SJD sent Plaintiff's New Jersey counsel an email stating: "How do you tell that Patrick Cerillo is lying? His lips are moving." *See* Ex. B-12. She has sent *innumerable* similar emails to everyone that represents Plaintiff.

The Internet hate group targets *everyone* that it can identify. In a Tweet from SDJ to opposing counsel – Twittter handle @Perioaattorney – SJD asks: "who is elozano? (metadata

4

complaint author)." Answering her own question, SJD tweeted "Erika Lozano, Lipscomb's paralegal." Significantly, that  day, a fake Linkedin page was created for Ms. Lozano which identifies her as a paralegal working for Mr. Lipscomb. Ms. Lozano's real Linkedin page indicates she works for another firm. *See* fake at Ex. B-13 and real at Ex. B-14.

    3.    <u>Opposing Counsel and The Internet Hate Group Are Attempting Invoke the Government's Criminal Powers to Stop Plaintiff From Enforcing Its Copyrights And By Doing So Are Inciting Violence Against Plaintiff</u>

The Internet hate group has conspired to and is implementing an unethical and illegal campaign to intimidate Plaintiff by threatening it with criminal sanctions.[2] In furtherance thereof, opposing counsel falsely alleges that Plaintiff violated the Federal Anti-gratuity Statute, 18 U.S.C. §201(b)(3) and 18 U.S.C. §201(c)(2) which makes it a crime, punishable with time in prison to, "corruptly . . . offer, or promise [] anything of value to any person . . . with intent to influence testimony under oath. . . ." *See* CM/ECF 27. Opposing counsel apprised SJD and the other members of his false allegations. *See* Ex. B-15. As was inevitable, SJD and the hate group members have written extensively about these false allegations. *See* Ex. B-16. Significantly, opposing counsel has *never* advised SJD nor any other hate group member to cease

---

[2] Under 720 ILCS 5/12-6, a person is guilty of felony "Intimidation" when, with the intent to cause another to perform or to omit the performance of an act . . . [the person] (1) threatens to inflict physical harm; (4) accuses a person of an offense; or (5) expose the person to hatred, contempt or ridicule. Intimidation carries a minimum two year prison sentence.

Illinois State Bar Rule 1.2(e) states "(e) A lawyer shall not present, participate in presenting, or threaten to present criminal charges or professional disciplinary actions to obtain an advantage in a civil matter."

5

harassing Plaintiff and to refrain from publishing information that could prejudice a jury. Silence speaks volumes.

Additionally, opposing counsel is threatening to bring a barratry count against IPP. *See* Ex. B-17. Barratry is a *crime* which prohibits instigating frivolous litigation. Further, opposing counsel *routinely* threatens to bring sanctions motions against Plaintiff and its counsel – in the very first email he sends about every new client he gets. *See* Composite Ex. G. To date, he has filed two sanctions motions (excluding this case). *Malibu Media, LLC v James Helferish*, 1:12-cv-00842, [CM/ECF 90] (S.D. In., June 18, 2012); *Malibu Media, LLC v. Kelley Tashiro*; 1:13-cv-00205, [CM/ECF 61] (S.D. In., February 5, 2013). None have been successful.

Last month, attorney Morgan Pietz falsely alleged in pleadings that Plaintiff violates 18 U.S.C. §2257, a record keeping law. Then he sent a press release to a trade magazine. *See Malibu Media v. John Doe*, 13-cv-00435, (S.D. Cal. Nov. 14, 2013) CM/ECF 17; http://newswire.xbiz.com/view.php?id=171589. Violating Section 2257 carries substantial criminal penalties. In tandem with Mr. Pietz's efforts, SJD has taken to repeatedly accusing Plaintiff of producing child pornography. *See* Composite Ex. E for examples. Child pornography carries a fifteen to thirty year prison sentence. *See* 18 U.S.C. § 2252.

Right now, SJD is falsely asserting Plaintiff violated the Ventura county coastal zoning ordinance by filming without a permit and falsely accusing Plaintiff of violating Ventura County ordinance #4452 titled "Safer Sex in the Adult Film Industry. *See* Composite Ex. F.

All of the foregoing inflammatory allegations of *criminal* wrong-doing are intended to harass Plaintiff. They also have the intended potential to incite violence against Plaintiff.

4.  Internet Defamation and Tortious Interference

SJD contacted the owner of the development where Brigham and Colette Field, Plaintiff's owners, intend to purchase a lot next to their existing home. SJD defamed Plaintiff by telling the developer that the Fields would use their home to film child pornography. *Field Dec.* at ¶ 12. SJD's comments required Plaintiff's principal to assure the developer that SJD was wrong and a stalker. *Id.* at ¶ 13. Plaintiff's principal appeared on the Howard Stern Show to promote Malibu Media. *Id.* at ¶ 14. Afterwards, a discussion broke out on the Howard Stern fan message boards, comprised mostly of fans complementing the X-Art brand. *See* Exhibit B-18. SJD's side kick, Raul, jumped in and defamed Plaintiff as an extortionist and posted links to SJD's defamatory blog. *See* Ex. B-19. SJD also Tweeted offensive comments about Plaintiff to Forbes magazine. *See* Ex. B-20. This month, SJD attacked Plaintiff's promotion of its videos on the website www.vimeo.com. In her comment she referred to X-art as "barely legal" and claimed that it was engaged in "pure extortion." *Field Dec.* at ¶ 15. Plaintiff deleted this comment each time it was posted. *Field Dec.* at ¶ 16. Vimeo eventually got so fed up it took down Plaintiff's page. At the time, Plaintiff was receiving over 10,000 visits a day on its Vimeo page. *Field Dec.* at ¶ 17.

5. <u>Opposing Counsel Is A Key Member Of the Internet Hate Group</u>

Opposing counsel regularly Tweets with the other members of the hate group. *See* Composite Ex. H. Further, his Tweets are often part of a series of Tweets intended to harass Plaintiff and its counsel. *Id.* Opposing counsel also Tweets about on-going litigation including this case and disparages Plaintiff. *Id.* He even called Plaintiff a liar.[3]





Opposing counsel is SJD's and the other group members' darling. They give him Kudos as he works toward trying to criminalize peer-to-peer copyright infringement suits.



Since at least as early as December 9, 2013, opposing counsel has *known* Plaintiff receives death threats. *See* Ex. H-5. Opposing counsel belittled this serious situation by tweeting "Hah" and continues to work with the hate group.



---

[3] Illinois Bar Rule 3.6(b)(1) prohibits making an extrajudicial comment on a party or witnesses' credibility prior to a jury trial. *Voir dire* in this matter will have to address opposing counsel and the blog's defamatory extrajudicial statements.

8

Opposing counsel also posts Plaintiff's discovery responses on his firm's website. *See* his disparaging comment that "Malibu made some admissions, I honestly thought would be evaded in some manner." *See* Ex. H-8.



Opposing counsel's deep involvement with the Internet hate group, Tweets about this case and Internet posts of Plaintiff's discovery responses *makes clear* he intends to share information learned through discovery with the Internet hate group.

## II. LEGAL STANDARD

Fed.R.Civ.P. 26(c) protects parties from "annoyance, embarrassment, oppression, or undue burden or expense." Generally, protective orders provide a safeguard to parties and other persons in light of the otherwise broad reach of discovery. *See* Ad. Comm. Notes to 1970 Amendment to Rule 26(c). "The only requirement in deciding whether or not to issue a protective order is the statutory mandate of 'good cause.'" *Nieves v. OPA, Inc.*, 948 F.Supp.2d 887 (N.D. Ill. 2013), citing *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 37 (1984). "Good cause . . . generally signifies a sound basis or legitimate need to take judicial action." *Hobley v. Chicago Police Commander Burge,* 225 F.R.D. 221 (N.D. Ill. 2004). "In analyzing whether good cause exists for the entry of a protective order, the court balances the importance of disclosure to the public against the harm to the party seeking the protective order." *Patterson v. Burge*, 2007 WL 433066,*2 (N.D. Ill. 2007) (entering protective order). Consistent with the spirit of the Rule 26(c), courts have held that protection from physical and emotional distress by stalkers warrants the issuance of a protective order. *See Galella v. Onassis,* 487 F.2d 986 (2d

9

Cir. 1973) (protection of public figure from physical and emotional harassment warranted denying party right to attend deposition). The Supreme Court has expressly stated that Rule 26(c) protects privacy interests. *Seattle Times, supra,* 104 S.Ct. at 2208 n. 21.

    A. <u>The Public Does Not Have a First Amendment Right to See *Discovery* Materials; The Government Has a Substantial Interest in Protecting Privacy and Reputation</u>

"[P]retrial depositions and interrogatories are not public components of a civil trial . . . . they are conducted in private as a matter of modern practice." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984). "A litigant has no First Amendment right of access to information made available only for purposes of trying his suit." *Id.* "Thus, continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations." *Id.* The scope of discovery is broad under Rule 26. *Id.* "There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.*

### III. ARGUMENT

    A.    <u>Plaintiff's Privilege Log Should Be Protected</u>

The privilege log should be protected under an attorneys' eyes only order. As set forth above, opposing counsel regularly communicates with an internet hate group of cyber-bullies who stalk, defame, threaten and harass Plaintiff as well as *every one* of Plaintiff's identified attorneys and agents. The privilege log contains information that can be used to identify previously unidentified people. If disclosed *there is no doubt* that the Internet hate group will

10

harass and threaten everyone it identifies. Plaintiff and its counsel's ability to attract and retain qualified people will be negatively impacted.

The Northern District of Illinois granted a protective order in a similar case where a party maintained a website dedicated to criticizing the opposing party and intended to "send the videotapes [of depositions] to the media, or post the transcripts on the internet." *Baker v. Buffenbarger*, 03-C-5443, 2004 WL 2124787 (N.D. Ill. Sept. 22, 2004). "In this case, it is apparent that Plaintiffs intend to use Defendants' deposition testimony to further their crusade of criticizing and embarrassing Defendants. . . . the Court will not allow the discovery in this case to be misused in the manner Plaintiffs suggest." *Id.* Just as in *Baker,* here, this Court should not allow opposing counsel to further his crusade of criticizing and embarrassing Plaintiff.

**B.    Plaintiff's Financial Records Should Be Protected**

Plaintiff is producing its tax returns on February 12, 2014. It does not currently have monthly profit and loss statements. To comply with this Court's order, Plaintiff's principal is creating monthly P&Ls. The project will be finished in a week or two. Plaintiff will produce them as soon as possible.

"Disclosure of tax returns is highly restricted." *Methodist Hospitals, Inc. v. Sullivan,* 91 F.3d 1026, 1031 (7th Cir. 1996). Courts "generally [hold] that tax documents of any stripe are confidential business information." *Crissen v. Gupta*, 2013 WL 5960965 (S.D. Ind. Nov. 7, 2013). "[A] variety of courts, including district courts in this circuit, have also opined that 'a public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns.'" *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74-75 (7th Cir. 1992).

11

Good cause exists to grant Plaintiff a protective order to label its financial records "attorney's eyes only." Plaintiff is a multi-million dollar business. It has two owners, Brigham and Colette Field. Its tax return describes their personal wealth. Unless protected, the Fields will be harassed by the hate group who already calls them "greedy scumbags." *See supra.* Additionally, competitors would learn Plaintiff's revenue and profits, and other aspects relating to its finances. This will place Plaintiff in a vulnerable position.

### C. Plaintiff's Agreement With IPP Should Be Protected

Both IPP's oral and written agreement with Plaintiff is confidential commercial information within the meaning of Rule 26(c)(1)(G). If disclosed, IPP may raise the amount it charges Plaintiff for its data collection services. Plaintiff believes it is getting a good deal from IPP and wishes to maintain it. *Field Dec.* at ¶ 18. Disclosing the terms of the agreement would also adversely affect IPP's business; its other customers may accuse it of overcharging them. Alternatively, another data scanning service may attempt to poach Plaintiff away from IPP. Finally, the Internet hate group will certainly use this information to harass Plaintiff and IPP.

The information is also not relevant and unfairly prejudicial. As explained in Plaintiff's Memorandum In Opposition to Bar Testimony, no witness has ever been paid for testimony, and the evidence reported to Plaintiff by IPP is independently verifiable. Consequently, at the appropriate time, Plaintiff will move *in limine* to prohibit this evidence from being introduced at trial. If Defendant wants to make arguments about the agreements then Plaintiff can file its interrogatory answer describing the oral agreement and the written agreement under seal so that the Court knows the facts. There is no reason to disseminate it to the hate group now.

In *Directory Concepts, Inc. v. Fox*, 2008 WL 5263386, at *7 (N.D. Ind. 2008), the Court entered a protective order preventing the "Disclosure of Non–Party Private Information [because

12

it] would risk unnecessary annoyance or embarrassment of non-parties, would unfairly and gratuitously invade the privacy of non-parties, would subject non-parties to the possibility of identity theft, and would strain the business relationships the parties have with the non-parties." The *Directory Concepts* Court also found disclosure "would enable a competitor to target the producing party's customers and potential customers, undercut the producing party's pricing, and mimic the producing party's successful business plan." The rationale set forth in *Directory Concepts* applies equally in this case. A protective order is warranted here too.[4]

### D. Plaintiff Requests That Discovery Be Managed Tightly

Opposing counsel's wild goose chase to find a "smoking gun" will come to no avail. There can be no "smoking gun." This case is not like the widely publicized Prenda case where John Steele made up a client and then bought and sued on copyrights. Plaintiff is a real multi-million dollar business. Its owners' *genuinely and deeply* want to protect their copyrights. Indeed, as set forth above, they have endured nearly unbearable harassment because of this commitment. Ms. Field and other employees of Plaintiff routinely testify in proceedings and attend mediations. Plaintiff has a constitutional right under the Petition Clause to sue for infringement. *Nothing* can be discovered that will prevent Plaintiff from exercising this right. Without any evidence of malfeasance, opposing counsel is intentionally harassing Plaintiff with extremely burdensome discovery. Consequently, a relatively simple peer-to-peer copyright infringement case is being *needlessly* complicated. Indeed, while discovery is in its early stages, Plaintiff already knows Defendant is the infringer because Defendant's WiFi router *requires* an 8

---

[4] Plaintiff does not have the date of first recorded infringement for each .torrent file in its possession. However, Plaintiff is obtaining this information from Michael Patzer and will produce it.

digit password and Defendant does not subscribe to cable television. Opposing counsel's fishing expedition should be limited to legally cognizable claims or defenses and managed tightly.

1.  **Discovery Related to Hash Values Generally Should be Prohibited**

Several discovery requests seek *all* information related to the .torrent files with the unique hash values infringed by Defendant. Defendant infringed twenty four (24) works. Defendant sent Excipo's servers 301 "pieces" of these works. Each transaction for a piece is set forth on a MySQL server log report. Each piece correlates to a PCAP. At trial, Plaintiff will introduce one PCAP per infringed work and the log report. Plaintiff is producing all of this.

IPP charges Malibu by the hour to extract the PCAPs. It is labor intensive. Each month around three hundred thousand people infringe Plaintiff's works globally. If Defendant wants more than the twenty-four PCAPs he should pay for them. He can buy anyone on Defendant's MySQL report. If he wants all third party infringement data in Excipio's possession it will cost *hundreds* of thousands of dollars. Malibu pays **[REDACTED]** a month for a small portion of what Defendant wants. Third party evidence is not even relevant. Defendant would not and could not use it. Plaintiff should be protected from this harassment.

E.  **[REDACTED]**

**[REDACTED]**. To prevent the spoliation of evidence, Plaintiff respectfully requests that the Court enter a sealed order preventing opposing counsel and Defendant from talking about the contents of this Motion or **[REDACTED]** with *anyone*. If Plaintiff's intentions are revealed, there is a high probability of spoliation of evidence.[5] **[REDACTED]**. *Paige Dec*. at ¶ 20, Exhibit L.

---

[5] Opposing counsel should appreciate the potential for spoliation. He currently represents three of Plaintiff's defendants. One Defendant, in a case where he has filed identical motions, deleted hundreds of files containing BitTorrent Clients and .torrent files the day before his computer was

### F.     **Plaintiff Requests The Court Enter The Model Confidentiality Order**

As is clear from the parties' papers, there is a *real* lack of trust between the parties and their counsel.  This is a shame because Plaintiff tries hard to act cooperatively with all counsel.  Indeed, as it did here, Plaintiff stipulates to the entry of protective orders as a matter of policy in its cases and also as a matter of policy will acquiesce in a defendant's request to stay anonymous up until trial.  *See* CM/ECF 14.   Here, to facilitate the exchange of discovery in this case, Plaintiff respectfully requests that Court enter its Model Confidentiality Order as set forth in N.D. Ill. L.R. 26.2.  Knowing that opposing counsel will be subject to sanctions if he continues to share information with the Internet hate group will go a long way toward assuaging Plaintiff's concerns about providing him with discovery.  Consequently, it will reduce the likelihood that the parties will need further judicial involvement.

### IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter its Model Confidentiality Order as set forth in N.D. Ill. L.R. 26.2 and a sealed order preventing opposing counsel from talking about the contents of this Motion or **[REDACTED]** with *anyone*.

Dated: June 11, 2014

Respectfully submitted,

SCHULZ LAW, P.C.

By:     /s/ *Mary K. Schulz*
Mary K. Schulz, Esq.
1144 E. State Street, Suite A260
Geneva, Il 60134
Tel: (224) 535-9510
Fax: (224) 535-9501
Email: schulzlaw@me.com
*Attorneys for Plaintiff*

---

imaged.  *See* Ex. I.  To date, Plaintiff has either found the infringing .torrent files or evidence of spoliation on every one of the numerous computers it has searched.  Perjury coincides with spoliation.  Two defendants have failed lie detector tests; none have passed.  *Field Dec.* at ¶ 19.