## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No.: <u>1:13-cv-06312</u> |
| | ) | |
| v. | ) | Assigned to: |
| | ) | Honorable Geraldine Soat Brown |
| JOHN DOE subscriber assigned IP address | ) | U.S. District Judge |
| 24.14.81.195, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Jurisdiction and Venue

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1338.

2.      Venue is proper because Defendant resides in this District.

### B. Malibu Media Owns the Copyrights-in-Suit

3.      Malibu Media produces its own high-quality content.  *See* Declaration of Colette Pelissier Field "Field Decl.," attached hereto as Exhibit "A," at ¶ 20.

4.      Malibu Media is the registered owner of the copyrights set forth on Exhibit B to the Complaint [CM/ECF 1-2] (the "Copyrights-in-Suit"), which cover content released for sale by Malibu Media on its subscription based website, X-Art.com.  *See* Field Decl., at ¶¶ 48- 49 and Composite Exhibit D to Field Decl.

### C. Defendant Committed the Infringement

#### a. *Computer Records Prove the Infringement Was Committed by Someone Using Defendant's IP Address*

1

5.     As set forth on Exhibit A to the Complaint [CM/ECF 1-1], IPP, International UG, Plaintiff's investigator, through Excipio, established a TCP/IP connection with a computer (the "Infringer's Computer") using IP address 24.14.81.195.[1]  *See* Declaration of Tobias Fieser [CM/ECF 2-4] "Fieser Decl.," attached hereto as Exhibit "B," at ¶ 13 *See also* Declaration of Michael Patzer, "Patzer Decl.," attached hereto as Exhibit "C," at ¶¶ 7; 15.

6.     Plaintiff's investigator, IPP, through Excipio, recorded Defendant's IP address engage in 301 infringing  transactions or "hits" of Plaintiff's copyrighted movies between May 27, 2013 and September 13, 2013.  *See* MySQL log file attached here to as Exhibit "D"; *see also* Patzer Decl., at ¶ 21.

7.     Each one of these transactions was recorded in a packet capture ("PCAP") PCAP computer file.  *See* Patzer Decl., at ¶¶ 16-21; *see also* Computer Evidence, attached hereto as Exhibit "E."[2]

---

[1]     Excipio GmbH owns and uses a data collection system to identify the IP Addresses used by people to commit copyright infringement via the BitTorrent Protocol.  Excipio contracts with IPP to provide IPP with this data collection system, which is the system that IPP uses to detect infringement of Malibu's works.  Specifically, IPP licenses the use of Excipio's system and servers.  Here, Excipio's servers established a direct connection with Defendant's IP address, and IPP extracted the data relating to this connection.  To clarify, while Plaintiff at times refers to this system as being IPP's, in reality, this system and the servers are owned by Excipio.  Plaintiff is using this terminology in the sense that IPP is licensed to use the system and servers to extract data.

[2]     Exhibit E is a CD rom that has been Fed Ex-ed to the Court.  This CD contains: one PCAP per infringed work; one technical report per infringed work; one .tar file for each infringed work; and one .torrent file for each infringed work.  *See* Declaration of Michael Patzer at ¶ 28 for an explanation regarding each.  Please note, this CD contains 28 PCAPs.  There are only 24 works in the subject lawsuit. The discrepancy is due to the fact that four works were infringed after the time Plaintiff drafted the Complaint, and therefore, were not included in this lawsuit.

8.      Each infringing transaction is also recorded on a MySQL server log file. Each entry on the My SQL log file correlates to a specific PCAP file in Excipio's possession. *See* Patzer Decl., at ¶ 21; MySQL log, Exhibit D.

9.      PCAPs are recordings of the information exchanged between two computers. *See* Patzer Decl., at ¶ 16; *see also*, *e.g.*, Computer Evidence.

10.      Each PCAP shows Defendant's IP Address sending a piece of a copy of one of Plaintiff's copyrighted movies to the IP Address of the investigative servers. *Id.* at ¶ 20.

11.      Each PCAP shows what was transmitted: a packet of data (a/k/a a "piece" or "bit") that correlates by Cryptographic Hash Value[3] to a piece of Plaintiff's copyrighted works. *See id.*; *see also* Feiser Decl., at ¶ 13-15.

12.      Only one PCAP per movie infringed is produced. One PCAP per movie is sufficient to prove without question that the infringement of each of the movies at issue occurred. Producing all PCAPs for each of the infringed movies would be superfluous and extremely time consuming. Patzer Decl., at ¶ 27.

13.      Contemporaneously with their creation, the PCAPs are stored on a WORM drive. WORM stands for Write Once Read Many. Excipio uses these because it is impossible to modify or delete the data after it has been written to a WORM tape drive. Indeed, the WORM tape drive is not capable of being manipulated or altered. *Id.* at ¶ 23.

14.      The process of creating PCAPs and their reliability is *extremely* well understood by computer professionals. *See*, *e.g.*, Declaration of Patrick Paige, "Paige Decl.," attached

---

[3]      Cryptographic Hash Values are like digital fingerprints for data. Each piece of data has a unique Hash Value. Hash Values are calculated and never change. They are universally accepted by the Court's and computer professionals and more reliable than DNA and fingerprint evidence. *See* Exhibit "F," attached hereto citing numerous district and appellate court decisions describing hash values and finding they are reliable unique identifiers for data akin to digital fingerprints.

hereto as Exhibit "G," (knowledge of PCAPs); *see also*, *e.g.*, Patzer Decl. (knowledge of PCAPs).

15. Defendant's expert, Delvan Neville agrees PCAPs work. *See* Deposition of Delvan Neville, "Neville Depo.," attached hereto as Exhibit "H," at 37:18-24. And, Defendant's expert has no evidence that the PCAPs in this case are inaccurate. *See id.*, at 40:4-9.

16. Defendant also took a course where he learned about the reliability of PCAPs *See* Paige Decl., at ¶ 48.

17. Plaintiff's investigator then verified that the pieces of the computer files sent by Defendant's computer correlate (as evidenced by identical cryptographic hash values) to copies of Plaintiff's works. *See* Feiser Decl., at ¶ 15.

18. Plaintiff's investigator also viewed a control copy of each copyrighted work identified on Exhibit A to the Complaint [CM/ECF 1-1]. Each movie was viewed side-by-side with the corresponding digital media file identified by its hash value as set forth on Exhibit A to the Complaint. Plaintiff's investigator verified that each digital media file contained a motion picture that was identical, strikingly similar or substantially similar to the Movie associated with it as set forth on Exhibit A to the Complaint. *Id.* at ¶ 16.

19. That the torrented files are copies is not disputed. *See id.; see also*, *e.g.*, Computer Evidence, Exhibit E.

20. IPP's software also logged Defendant's IP address being used to distribute third party files through BitTorrent. This evidence indicates that Defendant engaged in BitTorrent transactions associated with 94 files between April 2013 and September 2013. Collectively, this evidence is referred as the "Additional Evidence." *See* Feiser Decl., at ¶ 17.; *see also* Additional Evidence ("Add. Evid."), attached hereto as Exhibit "I."

21.     The technology used to identify Defendant's IP Address as the infringer of Plaintiff's movies was tested by an expert and works.  *See* Paige Decl., at ¶ 24-37.

### b. *Comcast Accurately Correlated the IP Address to Defendant*

22.     Defendant's Internet Service Provider (ISP), Comcast, identified Defendant as the subscriber assigned IP address 24.14.81.195 on July 30, 2013, one day on which the infringement occurred.  *See* Comcast Response ("Comcast Response), attached hereto as Exhibit "J."

23.     Comcast further testified that it was "absolutely certain" that the subject IP address was assigned to Defendant on July 30, 2013.  *See* Comcast deposition, attached hereto as Exhibit "K", at 14:19-23.

### c. *Only Defendant Had the Means, Opportunity, Motive, and Know-How to Infringe*

#### i. Defendant's WiFi was Password Protected and He is the only Possible Infringer

24.     At all material times, Defendant's WiFi was password protected.  *See* Deposition of Defendant, "Def. Depo," attached hereto as Exhibit "L," at 22:19-21.

25.     Plaintiff's investigator detected Defendant's IP Address engaging in continuous BitTorrent activity for over five months, from April 2013 to September 2013.  *See* Add. Evid.

26.     During this time period, Defendant, his wife and his infant son were the only people residing in their house.  *See* Def. Depo., at p. 20: 21-23.

27.     Both Defendant and his wife testified that Defendant's wife did not commit the infringement.  *Id*. at 87: 18-22.; *see also* Deposition of Defendant's Wife, attached hereto as Exhibit "M," at p. 50: 9-14.

28.     Defendant only testified that some family members briefly visited during the birth of his son.  *See* Def. Depo., at 21:11-16.  *See also* Defendant's Answers to Malibu's First Set of Interrogatories "Interrog. Resp.," attached hereto as Exhibit "N," at No. 8.

29.     Defendant failed to identify anyone other than him and his wife who had regular access to his Internet during the period of recorded infringement.  *See*, e.g., *id.*

ii.     <u>There is No Evidence Someone Outside the Home Infirnged</u>

30.     There is no credible evidence that Defendant's WiFi was hacked during the period of infringement.  *See* Paige Decl., at ¶ 63.

31.     The screen shot of the mac address does not indicate when the screen shot was taken.  Unless the screen shot was taken during the time of the infringement, it is irrelevant.  *See* Paige Decl., at ¶ 63; *see also* Screen Shot, attached hereto as Exhibit "O."

32.     Each computer on a network has a unique MAC Address.  A WiFi router creates a wireless network.  A computer broadcasts its MAC Address to the WiFi router.  *See* Paige Decl., at ¶¶ 65-66

33.     MAC Addresses can be "spoofed." MAC spoofing is a technique for changing a factory-assigned MAC Address of a network interface on a networked device. This technique allows a user to "trick" an operating system into believing a device has the MAC Address of a user's choosing.  *Id.* at ¶ 67.

34.     Plaintiff's expert opined, "Defendant's screen shot does not even remotely suggest a WiFi hacker." *Id.* at ¶ 64.

35.     Unless a router's log files were deleted, those records would exist. *Id.* at ¶ 68.

36.     Defendant admits the screen shot of the "unknown mac address" was taken after he received the subpoena from Comcast—well after the period of infringement.  *See Def. Depo.* at p. 101:8-20.

37.     Defendant admits he has no other evidence that his Internet was hacked.  *Id.* at 104: 1-4.

38.     Defendant's expert did not detect any evidence of WiFi hacking during the period of infringement.  *See* Deposition of Delvan Neville, at p. 40: 9-16.

39.     None of Defendant's neighbor's recognized Defendants SSID.  *See* Neighbor Depositions, attached hereto as Composite Exhibit "P."

40.     All of Defendant's neighbors have their own Internet and pay for their own Internet subscriptions.  *Id.*

41.     Plaintiff's expert, Patrick Paige, testified that during his fifteen years of experience as a police investigator of Internet crimes, he never once came across a WiFi hacker situation.  *See* Paige Decl, at ¶ 22.

42.     Mr. Paige participated in approximately 200 cases where search warrants were used to catch computer criminals identified through IP Addresses, just like Defendant was identified here.  And, every single time the WiFi router was password protected, the police found the illegal materials in the subscriber's home.  *See id.* at ¶¶19-21.

        iii.   <u>Defendant is a Sophisticated Computer User with In-depth Knowledge of BitTorrent</u>

43.      Defendant has a degree in Information Technology and Management, has worked as a network engineer, and currently manages office networks and provides IT support.  *See Def. Depo.*, at 7:24-25; 8:1; 10:1-4; Defendant's Supplemented Answers to Interrogatories, attached hereto as Exhibit "Q," at No. 2.

44.     On one of Defendant's computers, Plaintiff's expert uncovered an academic paper co-authored by Defendant in 2009, entitled "Peer to Peer File Sharing Detection and Alert System." *See* Paige Decl., at ¶ 47.

45.     On page 10 of that paper, Defendant discusses ways of detecting Torrent traffic on a Network. On page 11, Defendant described BitTorrent as a "well know (sic) application." Defendant also has working knowledge of PCAPs. PCAPs are the records used by peer-to-peer investigators, such as Excipio here, to prove peer-to-peer transactions occurred. *See id.* at ¶ 48.

46.     Mr. Paige also discovered PowerPoint presentations relating to Peer to Peer File Sharing. *Id.*, at ¶ 47.

47.     Plaintiff's expert opined that "Defendant has substantial knowledge of BitTorrent and would be able to use it." *Id.* at ¶ 49.

48.     Mr. Paige also uncovered a course outline for a class titled "Introduction to Digital Forensics." This outline lists topics of study such as data acquisition, processing crime and incident scenes, forensic examination of a flash drive, forensic reports, network forensics, email investigations, and web investigations. *Id.* at ¶ 50.

### d. *Plaintiff' has Adduced Undisputed, Material Evidence Correlating Defendant to the Infringement*

#### i. Plaintiff's Additional Evidence Correlates Defendant to the Infringement

49.     Plaintiff's investigator also conducted expanded surveillance of Defendant's IP address and compiled a list of third party files downloaded using the address. Collectively, this is referred to as "Additional Evidence." The time period of the expanded surveillance directly overlapped with the time period of the infringement. *See* Add. Evid.; *see also* Exhibit A to the Complaint.

50. Plaintiff's expert, Patrick Paige, searched Defendant's hard drives to determine if the evidence of the third party files detected during the expanded surveillance also existed on the drive. The search results were positive. *See* Paige Decl., at ¶ 51-55.

51. Specifically, Plaintiff's Additional Evidence includes the following files relating to virtual machines:

| Defendant's IP Address | Torrent Name | Category | Date |
|---|---|---|---|
| 24.14.81.195 | CBT.Nuggets.VMware.Virtualization.VCP.vSphere.5 | Video | 6/29/2013 |
| 24.14.81.195 | TrainSignal - VMware vSphere Optimize and Scale (VCAP5-DCA) | Video | 6/29/2013 |
| 24.14.81.195 | VMware vSphere 5 Administration Instant Reference (2nd Edition).pdf | eBook | 6/29/2013 |
| 24.14.81.195 | Train Signal VMWare 5.1 | eBook | 2013/06/29-2013/06/30 |

*Id.* at ¶ 51.

52. The above titles evince the infringer's knowledge of and interest in virtual machines and virtualization software. *Id.* at ¶ 52.

53. A virtual machine is an emulation of a computer system which imitates the structure and functions of a real computer system. Virtual machines are created and operated using virtualization software, i.e., a virtual machine is an emulation of a computer system in the cloud. *Id.* at ¶ 53.

54. Defendant admits using vSphere 5.5 *See* Def. Depo., at 17: 19-25.

55. During Mr. Paige's examination of Defendant's Western Digital Hard Drive image, Mr. Paige located numerous virtual machines, including: Backtrack 3; Backtrack 4; Fedora11; Ubuntu 10.04.1; Ubuntu 8.04; Windows XP; Windows 2k Advance Server; Windows

XP Pro SP3. The files listed on Plaintiff's Additional Evidence, correlate to and are highly relevant to the use of these *exact* types of virtual machines. Paige Decl., at ¶¶ 54-55.

ii.    Other Evidence Implicates Defendant

56.     The Additional Evidence also includes software downloads for the GPS program, Tom Tom. *See* Additional Evidence.

57.     Mr. Paige also found a receipt for a Tom Tom on Defendant's hard drive. *See* Tom Tom receipt, attached hereto as Exhibit "R."

58.     Further, after Defendant was served with this lawsuit, he began using Tor—an Internet browser specifically designed to keep Defendant's Internet activities from being monitored. *See* Def. Depo., at p 78:4-6.

**e.    *Defendant's Denial of Liability is Inconsistent with the Computer Records***

59.     Plaintiff's expert reviewed the computer records and testimony in this case. *See* Paige Decl., at ¶ 60.

60.     And, he testified "[i]n my opinion, based on the computer evidence and testimony, Defendant is the infringer." *Id*. at ¶ 61.

**D.    Plaintiff's Copyrights are Valid and Plaintiff has Never Authorized Anyone to Distribute its Works Through BitTorrent**

61.     Each of the infringed works is original. Indeed, Malibu Media chooses for each film, among other things, the actors and actresses, locations, set designs, lighting effects, camera angles and music, and this combination of elements does not exist in any other work. Field Decl., at ¶ 21.

62.     Malibu Media has never distributed its works through the BitTorrent protocol, nor has it authorized anyone else to download (except IPP) or distribute its works through the BitTorrent protocol. Field Decl., at ¶ 28.

63.     Malibu Media does not now, nor has it ever, consented to or acquiesced in any person's use of the BitTorrent protocol to unlawfully download and distribute its copyrighted works.  Field Decl., at ¶ 57.

64.     Defendant admits he has no evidence to support his contention that Plaintiff allowed its works to be distributed through BitTorrent.  Def. Depo, at 96: 1-10.

65.     Malibu Media has never surrendered any rights to any of its works, nor has it evinced an intent to do so at any time.  Field Decl., at ¶ 56.

66.     A true and correct copy of the copyright registrations for Make me Feel Beautiful; Dark Desires; Going Strong; Newlyweds; Oh Mia; Model Couple; Elle Hearts Girls; Together at Last; What a Girl Wants Part #2; Girls Who Like Girls; Ready or Not; Good Morning Baby; Bad Girls; Jumping on the Bed; Featherlight; Old Enough to Know Better; Simply Stunning; Sapphic Waltz; Red Satin; Pretty Babies; The Young and the Restless; Fashion Models; Happy Birthday Capri; Snow White and the Prince., collectively, the "Copyrights-in Suit" are attached to the Field Decl. as Composite Exhibit D. *See* Field Decl., at ¶ 48; *see also* Composite Exhibit D attached thereto.

67.     Sixteen of Malibu Media's infringed works contains copyright notices.  *See* Field Decl ¶ 50; *see also* Composite Exhibit E, attached to the Field Decl.

68.     Plaintiff's website states that _all_ of its works are copyrighted. *See* Field Decl ¶ 51; *see also* Exhibit F attached to the Field Decl.  ("The content, materials, images, designs and other media (collectively, the "Content") which appear on x-art.com are protected by United States and worldwide copyright laws and may not be reproduced, transmitted, copied, edited, or published in any way whatsoever without the written permission of x-art.com. Unauthorized

reproduction, distribution or use of the Content is strictly prohibited. Without exception, copyright violators will be pursued and prosecuted to the fullest extent of the law.").

69.    Prior to this lawsuit, Plaintiff and Defendant were complete and total strangers. Field Decl., at ¶ 52.

70.    Defendant never requested that Malibu Media create the works that Malibu Media alleges he infringed.  Field Decl., at ¶ 53.

71.    Malibu Media did not deliver the infringed works to Defendant.  Field Decl., at ¶ 54.

72.    Malibu Media never intended for Defendant to copy and distribute the infringed works.  Field Decl., at ¶ 555.

73.    Use of the BitTorrent protocol to unlawfully download and distribute Plaintiff's copyrighted works causes significant immediate and irreparable damage to Plaintiff.  Field Decl., at ¶¶ 38-46.

74.    Despite sending thousands of DMCA notices per month, infringement continues. Field Decl., at ¶ 30.

75.    Malibu Media is the creator and owner of all the copyrighted works at issue in this case, and X-Art is the registered trademark under which Malibu markets these films. Field Decl., at ¶ 58.

76.    Plaintiff possesses the right to terminate a subscriber or to refuse to allow a person to subscribe.  *Id.* at 61.

77.    Plaintiff is a California company that operates solely in Malibu, CA. Plaintiff does not transact business in the state of Illinois.  Plaintiff has no representatives in Illinois, no offices in Illinois, and no distribution facilities in Illinois. *Id.* at ¶¶ 59-60.

DATED: April 17, 2015

Respectfully submitted,

By: /s/ *M. Keith Lipscomb*
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:      /s/ *M. Keith Lipscomb*