**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No.: 1:13-cv-06312 |
| | ) | |
| v. | ) | Assigned to: |
| | ) | Honorable Geraldine Soat Brown |
| JOHN DOE subscriber assigned IP address | ) | U.S. District Judge |
| 24.14.81.195, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BRIEF IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

The infringement *definitely* occurred.    Defendant is the *only* possible infringer.

Therefore, Defendant *must* have infringed.    Defendant's Motion for Summary Judgment does

*nothing* to disprove the indisputable truth of this syllogism.    Instead, Defendant relies on a

syllogism containing a provably false premise.    Specifically, Defendant *erroneously* argues: (1)

all relevant hard drives were produced in unaltered form; (2) Plaintiff's works were not on the

produced drives (as they would have been); and (3) therefore, Defendant did not infringe.    As

explained below, and on pages 10-11 of Plaintiff's Motion for Summary Judgment, Defendant's

assertion that all relevant hard drives were turned over and examined is *indisputably and*

*provably false*.[1]    It is *impossible* to logically reconcile the facts proven by the computer records

---

[1] For the avoidance of doubt, in addition to what is argued herein and the facts cited in Plaintiff's

LR56.1(b)(3)C) Statement of Facts in Opposition to Defendant's Motion for Summary Judgment,

Plaintiff *also* opposes Defendant's Motion for Summary Judgment based upon the arguments set forth in

and Defendant's testimony with any conclusion other than that Defendant infringed. Since the facts proving Defendant infringed are uncontested and conclusive, these facts also prove Defendant *must* have suppressed or spoiled evidence. As explained below, and in Plaintiff's Motion for Summary Judgment, the *only* rational and sustainable judgment can be for Plaintiff. Accordingly, Plaintiff – not Defendant – is entitled to summary judgment.

## II.    ARGUMENT

A.    *Plaintiff – Not Defendant – Is Entitled To Summary Judgment*

Summary judgment is proper when, as here, there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. *See also*, Plaintiff's Motion for Summary Judgment at p. 1 to 2 for the additional applicable decisional authority.

*1. Plaintiff Proves Facts That Make It Logically Impossible To Find For Defendant*

Defendant's Motion for Summary Judgment does not contain *any* evidence contradicting the following material facts:

(1) Excipio's computer records prove the infringement of Plaintiff's works occurred via IP Address 24.14.81.195;

(2) Comcast's computer records prove that it accurately correlated IP Address 24.14.81.195 to Defendant;

(3) Defendant's Internet was password protected during the period of recorded infringement;

(4) No one living outside Defendant's home had sufficient access to Defendant's Internet to be the infringer; and

(5) Defendant is the only person in his home with the means, motive, and know-how to be the infringer.

---

its Motion for Summary Judgment (CM/ECF 147) and the Statement of Undisputed Material Facts cited in support thereof. (CM/ECF 148).

As set forth on page 3 of Plaintiff's Motion for Summary Judgment, at any trial, Plaintiff would, if permitted, submit a special interrogatory to the jury pursuant to Fed. R. Civ. P. 49 asking it to decide if Plaintiff had proven each of the foregoing material facts. Based on the Undisputed Material Facts cited in Support of Plaintiff's Motion for Summary Judgment, *all* rational triers of fact *must* find Plaintiff proved each of the foregoing five (5) facts. ***Indeed, these are truly undisputed material facts for which there is no contrary record evidence.*** To be clear, Defendant does not challenge these facts. In light of these undisputed material facts, any judgment for Defendant would be fatally illogical and could not survive a JNOV motion or appellate scrutiny. *See* Fed. R. Civ. P. 49(b)(3) stating when the verdict is inconsistent with special interrogatories a court may: "(A) approve a judgment consistent with the answers - notwithstanding the general verdict [i.e., grant a JNOV motion], (B) direct the jury to reconsider its answers and verdicts; or (C) order a new trial [,]"(parenthetical added). In other words, a verdict that is inconsistent with the answers to special interrogatories cannot stand. Since Defendant does not offer any evidence to dispute the facts which conclusively prove he is liable, it is *impossible* to sustain a finding for Defendant in this case. As it relates to the parties' instant cross motions for summary judgment, this Court should expressly find whether Plaintiff has proved each of the foregoing material facts. *See Martin v. Seal*, 510 F. App'x 309, 314 (5th Cir. 2013) (holding court committed reversible error by failing to consider material relevant facts in its summary judgment analysis).

Defendant's defense boils down to this: (a) yes, Excipio recorded IP Address 24.14.81.195 infringing Plaintiff's works; (b) yes, Comcast accurately correlated that IP Address to me; (c) yes, my Internet was password protected; (d) yes, I admit there is no evidence that a third party had sufficient access to my Internet during the period of recorded

infringement to be the infringer; (e) yes, I know about BitTorrent; (f) yes, I wrote a paper about BitTorrent and detecting P2P network traffic; (g) yes, I am educated in computer forensics and therefore know how to hide and delete computer evidence; (h) yes, I use virtual machines; (i) yes, Excipio recorded my IP Address download virtual machine software; (j) yes, I have a Tom Tom; (k) yes, Excipio recorded my IP Address download Tom Tom software; and (l) yes, after being sued, I began using Tor to hide my Internet activities. But, I promise, Defendant claims, a BitTorrent-loving, virtual machine-loving, Tom-Tom-using ghost, neighbor, or unseen lurker must have committed the infringement. This *absurd theory* does not create a genuine issue of a material fact. It relies entirely on impermissible speculation "the demolition of which is the primary goal of summary judgment." *Hedberg v. Indiana Bell Telephone Company*, 47 F.3d 928, 932 (7th Cir. 1995). No one saw or detected a ghost, neighbor, or lurker. It is entirely improper to speculate one exists.

In short, the *undisputed* material facts logically compel a finding that Defendant is liable. Therefore, while not necessary, it is also not surprising Plaintiff's *highly* decorated former police officer and computer expert testifies "Defendant is the infringer." Plaintiff's Statement of Facts in Opposition to Defendant's Motion for Summary Judgment ("Facts in Opp.") at ¶ 58. Respectfully, summary judgment for Plaintiff is required.

B. *Defendant's Argument Against the Persuasive Force of the Additional Evidence Ignores Facts Eviscerating the Argument*

Defendant's attempt to minimize the importance of Excipio's computer records establishing Defendant torrented virtualization software – fails. Specifically, Defendant argues the virtual computers Defendant produced did not contain any evidence of ever having virtualization software. From this, Defendant argues there is no proof he downloaded virtualization software during the period of recorded infringement. This argument fails for

4

three reasons: (1) the lack of virtualization software indicates spoliation; (2) Defendant admits to using virtual machines on a *regular* basis during the performance of his job duties, *id.* at ¶ 1; and (3) Excipio is not a psychic, and therefore, could not have predicted this random interest. Therefore, although not necessary, the additional correlation to the virtualization and Tom-Tom software bolster the finding Defendant infringed.

### 1. The Lack of Virtualization Software Evinces Spoliation and Suppression

"Either the hard drives used in connection with the virtual machines was not produced for examination, or a material program (i.e., virtualization software was deleted from the one of the hard drives.)" *Id.* at ¶ 18. "When a computer deletes data, the data is moved to the computer's unallocated space." *Id.* at ¶ 19. There is no data in the unallocated space evincing it was deleted. *Id.* That is beyond fishy. Even Defendant's expert agrees "it is possible to delete evidence from the unallocated space of a computer without leaving any detectable proof of the deletion." *Id.* at ¶ 20 & 21. Why would Defendant do so except to hide evidence? Mr. Neville's conclusion that there is no reason for the software to be on there because the Defendant's license had expired fails to explain why there is no trace of it having been deleted. Further, it unreasonably presumes Defendant is not an infringer, which has been proven false.

### 2. Defendant Did Not Set Forth Any Evidence to Sustain WiFi Hacking

No one personally observed a hacker, and there is no record evidence to support the existence of a hacker. More importantly, Defendant has apparently entirely abandoned this ridiculous theory since it was not argued. Legally, since there is no record evidence to support the WiFi defense, the Court may *not* speculate about it. "Inferences relying on mere speculation or conjecture [are impermissible and] will not suffice" to defeat a motion for summary judgment. *Trade Fin. Partners, LLC v. AAP Corp.,* 573 F.3d 401,407 (7th Cir.

2009) (parenthetical added). Since the Court cannot speculate about a hacker and the record facts prove Defendant is the *only* possible infringer, Defendant *must* have spoiled or deleted evidence. While not necessary, the virtual machine and Tom-Tom evidence support this conclusion.

3. *At Least* Three Relevant Drives Were Not Produced[2]

Defendant did not produce *at least* three relevant drives. Two of the drives were connected to those of Defendant's Dell computers that he actually produced. The Dell's computer records indicate these drives were last connected to one of the Dell computers on June 14, 2012. From this singular fact, Defendant's expert, Mr. Neville erroneously opines that these two drives were not used after June 14, 2012. *See* Facts in Opp. at ¶ 4. Therefore, he erroneously opines these drives could not have Malibu's works on them. *See id*. at ¶ 7. This is illogical. If Drive A is plugged into Computer 1 then Computer 1 will record the connection. *See id*. at ¶ 5. Merely because Computer 1 does not record a later plug in time does not mean Drive A was not used after it was plugged into Computer 1. *See id*. Instead – and obviously – Drive A could have been plugged into Computers 2, 3, 4, 5, etc. after being plugged into Computer 1. *See id*. If so, Computer 1 would have no way of logging those subsequent connections. There is no way to ascertain when a drive was last used except by examining it. *Id*. As Patrick Paige said, doing so is contrary to "Computer Forensics 101." *Id*. Not surprisingly,

---

[2] Defendant's Ninth putative undisputed material fact avers "in his expert report Patrick Paige contends that two devices were not produced." This statement is misleading in that it follows Defendant's title "all relevant devices were provided." All Mr. Paige's report can be fairly read to say is that there is digital computer evidence on the Dell computers Defendant actually produced which show two drives were connected to one of the Dells and that he did not receive these two drives. In no way did Mr. Paige intend to imply that *only* two drives were not produced.

Mr. Neville never took Computer Forensics 101. *Id*. at ¶ 8. Instead, Mr. Neville merely took a 90 minute multiple choice test with no prerequisite. *Id*. at ¶ 10. Mr. Neville has never received any academic or peer supervised training in computer forensics. *Id*. at ¶ 8. Moreover, he does not even focus on computer forensics. Instead, he is a PhD student studying radiation health physics. *Id*. at ¶ 11. Further, his computer forensic experience is incredibly thin. Indeed, Mr. Neville could not confirm whether he has examined a mere twenty (20) computers in his entire life. *Id*. at ¶ 12. Mr. Neville is also biased. In fact, he only testifies for BitTorrent Defendants. And, he is still owed two-thirds of what he invoiced Defendant. *Id*.

Since no one knows when the subject drives were last used, Plaintiff's movies could have been on them. Defendant objected to producing them. *Id*. at ¶ 28. Additionally, Defendant objected when Plaintiff sought to subpoena Defendant's work computer. *Id*. at ¶ 27. The virtualization software Defendant torrented as well as Plaintiff's movies could have been on any of these drives. As for his work computers, obviously, it is easy to email data from computer A to B. It is also easy to cut and paste data or copy data from one computer to another via a portable drive (e.g., a thumb drive). And, if Defendant is like most professionals, he likely can connect remotely from work and home. There is no good reason to object to the production of potentially exculpatory evidence absent a desire to hide adverse information. Under these facts, an adverse inference is justified. To explain, the general rule is that "if a party has evidence ... in its control and fails to produce it, an inference may be warranted that the document would have been unfavorable." *S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co.*, 695 F.2d 253, 259 (7th Cir. 1982). Since Defendant consciously chose not to disclose, produce, or introduce relevant evidence that could potentially incriminate him, an adverse evidentiary inference is proper. *See N.L.R.B. v. Dorothy Shamrock Coal Co.*, 833 F.2d 1263, 1269 (7th Cir. 1987)

("Shamrock's failure to produce relevant evidence particularly within its control allowed the Board to draw an adverse inference that such evidence would not be favorable to it."); *Frontier Commc'ns Servs. Inc. v. Crystal Mgmt. Associates, L.L.C.*, No. 98 C 7475, 2000 WL 520952, at *2 (N.D. Ill. Apr. 25, 2000) (Just as the case is here, "an adverse inference would attach to [Defendant's] failure to produce these documents, which is not necessary to—but which further supports—the absence of any genuine dispute on the material facts here.")

### 4. The Relevant Drives *Must* Have Been Suppressed Or Spoiled

Defendant's fourth and fifth putative undisputed material facts are not only demonstrably false but fail as a matter of law. The fourth statement avers "John Doe did not download the complained of Malibu Works." This is a mere a denial. Mere denials are "insufficient" to defeat summary judgment. *See Liu v. T & H Mach., Inc.*, 191 F.3d 790, 797 (7th Cir. 1999) ("A bald denial . . . 'could not lead a rational trier of fact to find for the non-moving party[.]'") (citation omitted). Defendant's fifth statement avers "[t]here are no copies of any of Malibu Media works on any of Doe's devices." This statement fails to cite to any record evidence. Accordingly, it does not comply with LR 56.1(a) specifically requiring it to do so. Consequently, the Court should not consider it. Substantively, the statement is also directly contradicted by Patrick Paige's declaration stating "Plaintiff's Works were either on a computer Defendant failed to produce, or on a drive that he did produce, which has been modified in such a way to cause Plaintiff's Works to be undetectable." Facts in Opp. at ¶ 25. While Mr. Paige's deduction is reliable and credible, it is also unnecessary. Indeed any rational person must necessarily reach the same conclusion because it is the only logical conclusion which can be drawn from the undisputed material facts.

### 5. *Defendant Has An Obvious Motive To Suppress Evidence*

Defendant's assertion that all relevant hard drives were produced *assumes* Defendant *voluntarily* handed over, as opposed to suppressed or destroyed, the proverbial smoking gun. That is an *unreasonable assumption*. Common sense teaches that people who intentionally commit criminal or tortious acts suppress and spoil evidence to avoid punishment. That is *precisely* why police use search warrants.[3] Even then, many times, as police are banging down the doors, the evidence is going down the toilet.[4] Defendant has the exact same motivation to flush evidence here. Significantly, Defendant had nine months from the time he learned about this suit to hide and spoil the incriminating evidence. Absent intentional naiveté, why would anyone believe he did not do so under these facts. Defendant controls both his denial and what he produced. Accordingly, his failure to hand over the smoking gun proving his guilt adds nothing to his denial. This is particularly true when, *as here*, a defendant has taken more courses in computer forensics than his testifying computer forensics expert. *Id.* at ¶ 8. Based upon Defendant's extensive computer knowledge and skills, there is no doubt he *knows* how to hide and spoil computer evidence. Failing to find the smoking gun neither justifies granting Defendant summary judgment or failing to grant summary judgment in Plaintiff's favor. Indeed, as set forth *supra*, the undisputed material facts prove Defendant infringed and therefore must

---

[3] No search warrant was issued in this case. Facts in Opp. at ¶ 15. Further, no one corroborated Defendant's assertion that he produced all relevant drives. *See* Defendant's Statement of Material Facts [CM/ECF 146] (failing to cite to any record evidence, including even a self-serving declaration from Defendant).

[4] Many wrong-doers, including criminals and copyright infringers, hide, suppress and spoil evidence. *Id* at ¶ 14. Mr. Paige routinely finds evidence of spoliation and suppression on BitTorrent copyright defendants' computers who possess less computer knowledge than Defendant. *Id.* at ¶ 16.

have suppressed or spoiled evidence.  To be crystal clear, by proving 1-5 on p. 2, any trier of fact must implicitly find Defendant spoiled or suppressed evidence.  If A then B.

### 6. *Defendant's Other Putative Material Facts Are Also Demonstrably False*

Defendant's sixth putative undisputed material fact avers "[t]here were no Malibu Works on Doe's devices." [CM/ECF 146], at 2.  This statement mischaracterizes Mr. Neville's report which *merely* states "Malibu Media's copyrighted works are not present on any of *these* devices and there is no evidence to suggest they ever were."  Facts in Opp. at ¶ 23.  Mr. Neville *never* claims to have all relevant drives in his possession.  *Id.* at ¶22.  Indeed, any such claim would be impossible to make because no one executed a search warrant to seize Defendant's computers prior to this suit.  *Id.* at ¶15.  Further, Mr. Neville would testify here, as he did in a previous case, that the failure to find evidence of a work being on a hard drive does not mean that the work was never on it.  "There's software that, if combined with the right skill set, could be used to accomplish that."  *Id.* at ¶21.  Again, the statement that there were no Malibu Media works on Defendant's computer is also directly contradicted by Patrick Paige's expert report.  *See* p. 8 *supra*.

## III.    CONCLUSION

The facts of this case require that summary judgment be entered in Plaintiff's favor.  Indeed, a judgment for Defendant could not possibly stand.  Therefore, a trial would merely be a waste of time, money and resources.  Avoiding this unnecessary work and money is the purpose of Rule 56.

DATED: April 20, 2015

Respectfully submitted,

By: /s/ *M. Keith Lipscomb*
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229
*Attorneys for Plaintiff*

Respectfully submitted,

NICOLETTI LAW, PLC
Paul J. Nicoletti, Esq. (P44419)
33717 Woodward Avenue, #433
Birmingham, MI 48009
Tel: (248) 203-7800
E-Fax: (248) 928-7051
Email: pauljnicoletti@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:       /s/ *M. Keith Lipscomb*