1    **TRANSCRIBED FROM DIGITAL RECORDING**

2                    IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
3                           EASTERN DIVISION

4    MALIBU MEDIA LLC,                     )
                                           )
5               Plaintiff,                 )
                                           )
6          vs.                             )  No. 13 C 6312
                                           )
7    JOHN DOE, subscriber assigned IP      )
     address 24.14.81.195,                 )  Chicago, Illinois
8                                          )  January 23, 2015
                Defendant.                 )  9:44 A.M.
9
                     TRANSCRIPT OF PROCEEDINGS - Motion
10     BEFORE THE HONORABLE GERALDINE SOAT BROWN, Magistrate Judge

11   APPEARANCES:

12   For the Plaintiff:        NICOLETTI LAW, PLC
                               33717 Woodward Avenue
13                             Suite 433
                               Birmingham, Michigan  48009
14                             BY:  MR. PAUL JOSEPH NICOLETTI

15   For the Defendant:        THE RUSSELL FIRM
                               233 South Wacker Drive
16                             84th Floor
                               Chicago, Illinois  60606
17                             BY:  MS. ERIN KATHRYN RUSSELL

18

19                   PAMELA S. WARREN, CSR, RPR
                        Official Court Reporter
20                    219 South Dearborn Street
                             Room 2342
21                   Chicago, Illinois   60604
                          (312) 408-5100

22   **NOTE:  Please notify of correct speaker identification.**
     **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
23   **UNINTELLIGIBLE.**

24

25

1          (Proceedings held in open court:)

2               THE CLERK:  13 C 6312, Malibu Media, LLC versus Doe.

3               THE COURT:  Good morning, everyone.

4               MR. NICOLETTI:  Good morning, your Honor.

5               MS. RUSSELL:  Good morning, your Honor.  Erin Russell

6    for the defendant.

7               MR. NICOLETTI:  Good morning, your Honor.  Paul

8    Nicoletti for the plaintiff Malibu Media.

9               THE COURT:  Good morning, again.  Happy New Year.

10              MR. NICOLETTI:  You too.

11              MS. RUSSELL:  You too.

12              THE COURT:  We're here on the motion to compel and

13   motion for leave to file under seal.

14              Now what aspects of the motion are deemed by the

15   plaintiff to be confidential?

16              MS. RUSSELL:  I believe the exhibits that we had

17   referred to in our contempt motion were just things that

18   originally when they were produced to us by the plaintiff they

19   had designated as confidential.  And in order to honor the

20   protective order that's in place, we wanted to make sure that

21   we were very careful about not filing publicly without, you

22   know, leave of Court.

23              THE COURT:  And what I can see here as a possibility

24   is on page 3 of what is Exhibit A there is some names of people

25   who had some role in these works.  I assume that could

1    be -- but the motion itself, I don't see any reason why the

2    motion itself on anything else but page 3 of Exhibit A are

3    really confidential.  You know, we have the presumption here,

4    as you all know, of public filing.

5            So, Mr. Nicoletti, anything further on those --

6    Exhibits A that you would think couldn't be on the public

7    record?

8            MR. NICOLETTI:  No, your Honor.

9            THE COURT:  Okay.  So the motion to seal is granted in

10   part.  The plaintiff -- excuse me -- defendant shall file a

11   publicly filed version of exhibit -- of -- excuse me -- the

12   motion for order Docket Number 123 redacting only the response

13   to Interrogatory 22 on page -- Interrogatory 21 on page 3.

14           MS. RUSSELL:  Okay.  Thank you, your Honor.

15           THE COURT:  Okay.  So that takes care of that.

16           Now we're down to the heart of the controversy as we

17   wrap up what we hope is final fact discovery here.  I have read

18   the defendant -- the plaintiff's response.  Have you had a

19   chance to read it, counsel?

20           MS. RUSSELL:  Yes, I have last night, your Honor,

21   briefly.

22           THE COURT:  So what's left here?

23           MS. RUSSELL:  Well, you know, obviously we haven't

24   really had an opportunity to properly reply to it.  You know,

25   we're just looking for some odds and ends on discovery that

1    were not, you know, produced back when we issued the discovery

2    and when the responses are due.  We haven't been able to come

3    to an agreement.  And we had a couple of phone conferences and

4    conversations by email, you know, with regard to, you know, the

5    list of names.  We addressed that list at an appearance before

6    you in October or November, and that was the day that we talked

7    about a couple of names on that list were merely initials.

8         We also still needed full responses.  The request was

9    for the names and the contact information for certain people.

10   And when we got --

11        THE COURT:  Let me interrupt you here to say, we're

12   here, Mr. Nicoletti is here, let's get this done.

13        MS. RUSSELL:  Yeah.

14        THE COURT:  I don't want another written response and

15   another motion hearing.  Let's get it done.

16        So what is the number one thing on your list, the most

17   important thing, you think has not been provided.

18        MS. RUSSELL:  The number one thing that we're looking

19   for is actually not related to the list of names.  What we have

20   asked for several times is in this case Malibu has claimed that

21   they received from our client's IP address a piece of each of

22   the copyrighted works at issue.  In other words, a piece that

23   came directly from this IP address.

24        We have asked for them to identify and produce to us

25   what piece are you claiming you got from our guy, not other

1  pieces that you got from other people, what pieces are you

2  claiming our guy distributed.  And that's the information we

3  can't seem to get.

4        THE COURT:  Okay.  Now where is that in Interrogatory

5  or Document Request 4?  Where is that -- that seems to me

6  clear, what you are asking for is clear.  But I would like to

7  see where it appears in the interrogatories.

8        MS. RUSSELL:  We'll locate it, your Honor.  One

9  moment.

10        Forgive me, your Honor, Mr. Phillips was going to

11  cover today's hearing, but he -- his mother is having surgery,

12  and he could not be here so I'm covering for him at the last

13  minute.  But I do have the information here.

14        I believe that that would be in response to

15  Interrogatory 25.

16        MR. NICOLETTI:  Could I share with you?

17        MS. RUSSELL:  I believe that's what Jonathan noted in

18  the motion on page --

19        THE COURT:  Okay.  Would you please tell me where I

20  can find that Interrogatory 25 in this motion here?

21        MS. RUSSELL:  It should be, I believe, Exhibit B.  And

22  the reference to it is on page 3 of our motion for contempt.

23        THE COURT:  Well, I want to see the actual

24  interrogatory.  Okay.  Interrogatory B, okay, of plaintiff's

25  supplemental responses are interrogatory B, but I don't see the

1    request.

2         Where is the interrogatory?  Please refer --

3       (Discussion off the record.)

4         THE COURT:  Is this it on page 2 going over to 3 on

5    Exhibit B?

6         MS. RUSSELL:  Yeah.

7         MR. NICOLETTI:  Two going over to three.  Right here.

8         MS. RUSSELL:  Oh, yes, at the bottom of page 2.

9         THE COURT:  Please identify each and every piece

10   received from Doe's IP address by reference to:  One, the date,

11   hash value, and file name, which Malibu or its agents slash

12   investigators actually used in the reassembly of the works so

13   as to create copies of the works as listed in Complaint A --

14   Exhibit A to the complaint.

15        MS. RUSSELL:  That's correct, your Honor.

16        THE COURT:  Okay.  So the question is what

17   pieces -- piece or pieces did you actually get from Doe?

18        MR. NICOLETTI:  Your Honor, if you read -- if you have

19   the exhibit in front of you, obviously you do, our response to

20   Interrogatory Number 25 indicates we have got the -- an

21   objection as the preamble.  But plaintiff already produced the

22   MySQL log file, which lists each hit date and file name for

23   every transaction as of the filing of the complaint.  I don't

24   think there is any question about that.

25        Excipio is in possession and control of the hash value

1    for each piece received from defendant's IP address.  And we

2    bent over backwards.  We contacted Excipio, and we actually had

3    to pay to get this information.  And we obtained this

4    information from Excipio for the defendant, even though we had

5    no obligation -- no obligation to do so because previously we

6    had discussed that Excipio, if we don't have it, we don't have

7    to get it.  We got it from Excipio.  We paid for it.  And we

8    gave it to them in the form of an Excel spreadsheet.

9          It is voluminous in nature.  And there is no question,

10   Ms. Russell isn't arguing that she doesn't -- that she didn't

11   get this information in the form of a spreadsheet.  That is

12   everything that we rely on.  That's the hit date.  It is all in

13   that report.

14         And I personally have not reviewed every page of the

15   report because it is so voluminous.  It is so much information.

16   But that is the information that they wanted, and that is the

17   only form that we are able to get the information in.  And so

18   we have given -- we have given them everything pertaining to

19   that issue.

20         MS. RUSSELL:  Here's what we don't have.  In the

21   original -- early in the case when they file a motion for leave

22   to issue the subpoena, their motion for early discovery, they

23   claim they got a piece of the movie from our client.  They

24   compared it to the original copyrighted work, and they

25   determined that it matched and it reflected some portion of the

1    work.

2         We do have a MySQL, you know, spreadsheet that they

3    sent to us.  But what it doesn't reflect is what piece did you

4    get from our client and then hold up next to your movie to say

5    that matches, that's an infringing piece of the work.  That's

6    what we don't have.

7         THE COURT:  How do you make that connection?  What

8    does the spreadsheet do for you to help you make that

9    connection between Mr. Doe's IP address and the work?

10        MR. NICOLETTI:  Your Honor, it details the IP address,

11   the date and time that the information was exchanged.  There

12   are really three main components.  There is a SQL log file.  It

13   is very complicated.  And I'm not going to stand here and say

14   that I understand the technical aspects of it because it is way

15   over my head.

16        But there is a SQL log file.  There are PCAPs that

17   actually record the transaction between IPP's server and the

18   defendant's IP address.  And it is like taking a video camera

19   and then recording the entire transaction.  So, so she has

20   that.  And I think that that's really what she's asking for.

21        But over and above that, the spreadsheet is the whole

22   enchilada.  That's everything.  This -- everything that she is

23   looking for is on the spreadsheet, and in -- with the IP

24   address, the hit dates, the movie, the times.

25        And this is not just a single download where there are

1   24 works.  Every time there is a download, it is at a different

2   point in time and it communicates back and forth.  It is very

3   technical, your Honor.  And perhaps the remedy for the issue is

4   for them to have an expert look at the PCAPs, the SQL files in

5   the spreadsheets that we have given them, because that's all we

6   have.

7           THE COURT:  Okay.  Let me ask this question.  Did you

8   designate any 30 -- Rule 26(a)(2) testimony --

9           MR. NICOLETTI:  Yes, your Honor.

10          THE COURT:  -- do you recall any --

11          MR. NICOLETTI:  Yes, your Honor.  That's -- I -- from

12  IPP and Excipio.  And they are the -- and we had it, this whole

13  debacle with Excipio before, if you remember, where they wanted

14  to test the Excipio software, and they wanted to make sure that

15  the communications were accurate.  And this kind of underlies

16  that entire issue which they made a big fuss about, and then

17  all of a sudden decided when the Court said, okay, you

18  can -- you can have -- Excipio was here in court, and they

19  said, okay, forget it, we're not going to test it.

20          So now they are going back and they are trying to get

21  us to interpret the information in the three main components,

22  the SQL file, the PCAPs, and in the spreadsheet.  They are

23  trying to get us to interpret that data for them when, first of

24  all, I can't do it, my client can't do it.  They -- they could

25  have deposed IPP or Excipio, but they chose not to.

1      THE COURT:  Let me ask this, did you issue your

2  report?  Did you issue your report from these people?

3      MR. NICOLETTI:  Your Honor, everything has been

4  served.

5      THE COURT:  Did you get a report?

6      MS. RUSSELL:  I don't have -- we have -- I think we

7  received a report from one expert.

8      THE COURT:  I mean, presumably -- sorry to interrupt.

9      But, presumably, you know, you're going to have to

10  explain this to a trier or fact.  And if you find it,

11  Mr. Nicoletti, challenging to decipher this and need expert

12  testimony to decipher it and make the link, I think it is very,

13  very likely that myself or a jury, if the jury is the one

14  deciding this, will also need that sort of testimony.

15      So, you know, I am thinking that this is a piece of

16  what your expert should be explaining in his or her report.

17  And that if Ms. Thom -- Ms. Wilson has that -- I got it right,

18  Wilson?

19      MS. RUSSELL:  Russell.

20      THE COURT:  -- Russell has that report, then she has

21  the key to interpreting the spreadsheet, I would assume.

22      MR. NICOLETTI:  Your Honor, can I just add that Tobias

23  Fieser and Michael Patzer are the two individuals associated

24  with IPP and Excipio.  They are identified in our disclosures,

25  not as expert witnesses because we have got an expert witness,

1   Patrick Paige, who is going to testify as to the data, and

2   the -- the final results of the interpretation.

3        So IPP and Excipio don't issue reports because they

4   are not -- they are not considered -- they are not listed as

5   expert.

6        THE COURT:  Well, let me just point out that Rule

7   26(a)(2) requires that every witness who is going to give

8   testimony under Rule 703, 704 or 70- -- 702, 703 or 705 must

9   make -- be the subject of a disclosure and, in many cases, a

10  report, Rule 26(a)(2).

11       In addition to the disclosures required by Rule

12  26(a)(1), a party must disclose to the other parties the

13  identity of any witness it may use at trial to present evidence

14  under Federal Rules of Evidence 702, 703 or 705.  And 702 is

15  very broad as to what is the subject of expert testimony, a

16  witness who is qualified as an expert by knowledge, skill,

17  experience, training or education.

18       So, in other words, if your employee is going to get

19  up here and give technical evidence, he has to be subject of a

20  formal disclosure under Rule 26(a)(2).  If he is going to get

21  up there and talk about anything that is beyond the common ken

22  of a juror or trier of fact, he is going to have to be the

23  subject of a Rule 26(a)(2) disclosure.

24       Now some witnesses who give that testimony are subject

25  to a report.  But even witnesses who do not provide a written

1    report must be disclosed by the attorney in a disclosure that

2    states the subject matter on which the witness is expected to

3    present evidence under Rule of Evidence 702, 703 or 705, and a

4    summary of the facts and opinions to which the witness is

5    expected to testify.

6          So unless those disclosures were made as to these

7    gentlemen under Rule 26(a)(2), which I set the deadline for the

8    plaintiff as the 9th, those people are not going to testify,

9    period, end of story.

10         MR. NICOLETTI:  I understand that, your Honor.  And

11   those disclosures were in fact made.  A summary of their

12   testimony and --

13         THE COURT:  What they made under Rule -- as a separate

14   Rule 26(a)(2) disclosure?

15         MS. RUSSELL:  No.  No.

16         THE COURT:  The Seventh Circuit has said in -- Musser

17   versus Gentiva Health Services, that disclosure under Rule

18   26(a)(1) or interrogatories are not sufficient.  A witness who

19   presents evidence under Rule 702, 703 or 705 must, must have

20   been disclosed in a formal Rule 26(a)(2) disclosure because

21   there are steps and measures that are required of people who

22   give technical, scientific or otherwise specialized testimony

23   that do not apply generally across the board to witnesses.

24         And in that case, Musser versus Gentiva Health

25   Services, which I'll give you the cite, 356 F.3d 751, a Seventh

1   Circuit decision of 2004, the Seventh Circuit affirmed summary
2   judgment for defendant because the Court refused to allow in
3   the testimony.  The Court refused to allow in the -- any
4   testimony by the treating doctor because, although he had been
5   disclosed in Rule 26(a)(1) disclosures, initial disclosures,
6   and interrogatories and everybody, quote, knew that he was the
7   treating doctor, there had never been a formal Rule 26(a)(1) --
8   (a)(2) disclosure served.  The trial court refused to let it in
9   and, accordingly, there was no proof of injury.  Accordingly
10  summary judgment for the defendant affirmed.

11          So I take those disclosures very seriously.  My
12  website has a specific standing order about expert testimony
13  that spells out these requirements.  And I will not, not, go
14  against the Seventh Circuit's mandate in Gentiva and other
15  cases that have come down since then that a Rule 26(a)(2)
16  disclosure must be served with respect to every witness who is
17  going to give any technical, scientific or specialized
18  knowledge testimony, employee or not employee.  No matter what
19  the relationship is, retained or not retained, that distinction
20  has gone out the (unintelligible) in 2010.

21          There may be a difference as to whether it has to be a
22  disclosure or whether it has to be an expert report.  But there
23  is no doubt anymore that you cannot have somebody get up and
24  testify about expert, scientific, technical or specialized
25  knowledge without a formal Rule 26(a)(2) disclosure, which is

1    why I set that date of the 9th.

2         MR. NICOLETTI:  And, your Honor, I don't have the

3    disclosure in front of me, and I apologize, I didn't -- I

4    didn't see that coming up as an issue.

5         But I am -- I will stand by whatever our disclosure

6    was.  I know that we disclosed Tobias Fieser, we disclosed Mike

7    Patzer, and we indicated that -- with a summary of their

8    testimony, and we complied with all the federal and the local

9    rules.  And if I had a copy of it, I could read it, but I don't

10   have it in front of me.

11        But what I am saying is that they don't -- in all the

12   hundreds of cases we have had, we have never had this issue

13   come up before where there was a report that was needed by IPP

14   or Excipio because they are fact witnesses.  They observed

15   firsthand the transaction taking place.

16        THE COURT:  Are they going to -- just like a treating

17   doctor, a treating doctor observes the patient come in to the

18   emergency room or wherever, but his testimony about that is

19   based on his technical, scientific or specialized knowledge.

20   He does not get to testify without a disclosure under Rule

21   26(a)(2).

22        So, you know, you can stand by it all you want, and

23   that's fine.  And I'll take a look at it.  And I'm not making

24   any judgments.  But I will tell you, I -- I, and every other

25   judge in this building, to my knowledge, follows the Seventh

1    Circuit rules, and the Seventh Circuit has said those

2    disclosures are required.

3          And now with the change in the Federal Rules of Civil

4    Procedure in 2010, there is -- there is just no ambiguity left.

5    I'm not going to permit people to testify under Rule 702 about

6    anything based on their scientific, technical or other

7    specialized knowledge, treating physician, employee.  Anything

8    that they looked at and interpreted that I could not look at

9    and interpret myself because I don't have specialized

10   knowledge, training or experience in this area is 702

11   testimony.

12         Now if Mr. Whatever his name is, Mr. Witness was

13   standing on a street corner and saw a car go through a red

14   light and hit another car, he can certainly come and testify

15   about that because that doesn't require specialized knowledge,

16   training or experience.  But if he is there interpreting

17   something based on that, he is giving testimony under Rule 702.

18         MR. NICOLETTI:  Your Honor, I think the best solution

19   is that if we can look at the disclosures and -- I believe that

20   we complied with the federal and --

21         THE COURT:  I mean, not -- I don't do your case for

22   you.  All I'm telling you is what I understand the law to be.

23   And, you know, I'll make a ruling.  And if the ruling excludes

24   your witness, you will be with Ms. Musser.  So that's the way

25   life falls.  I mean, you make your judgments, you make your

```
1   evaluation of what the law requires, and that's it.  What can I
2   say?  If they file a motion to exclude him as a witness, I will
3   take a look at it and see whether the testimony is going to be
4   permitted.
5           MR. NICOLETTI:  That's fair enough, your Honor.
6           MS. RUSSELL:  Your Honor, may I comment on this just
7   very briefly?  There were no disclosures filed and no review of
8   the --
9           THE COURT:  Well, no, filed isn't the word.
10          MS. RUSSELL:  Sure.
11          THE COURT:  Served is the word.
12          MS. RUSSELL:  Well, sure.  But -- and so what I was
13  going to say is nothing was filed.  And certainly all we
14  received was an email with some things that we put
15  Mr. Nicoletti on notice immediately we didn't feel were
16  sufficient.  And there have been a couple of conversations back
17  and forth about that.  So we'll address that, as you mentioned,
18  with a motion or whatever when -- at the appropriate time.  But
19  it is our position that this -- that appropriate disclosures
20  that comply with the rules have not been made.
21          THE COURT:  I mean, in many ways this does have very
22  strong parallels to a medical case in the sense that without
23  expert testimony on these issues, I don't see how you could
24  ever get to a trier of fact.  I mean, I don't know off the top
25  of my head how to link an ISP address with another number.
```

1    That's technical information.  Just the same as a medical case

2    relies on the testimony of a doctor to say that this injury

3    occurred and this was the treatment for it.  And that's what

4    you can't get in without a Rule 26(a)(2) disclosure that is in

5    an appropriate format.

6           MR. NICOLETTI:  Your Honor, that is -- Patrick Paige

7    is the doctor in your example, and he has been disclosed as an

8    expert, and he's been treated as an expert.  And so he is -- he

9    is going to give that testimony.  I agree that expert testimony

10   is necessary, and that's how we plan to introduce it.

11          THE COURT:  Well, we'll see if the disclosure was

12   sufficient.

13          Is he an employee?

14          MR. NICOLETTI:  No, your Honor.

15          THE COURT:  All right.  He is not an employee, then

16   he's retained.

17          MR. NICOLETTI:  He is retained.

18          THE COURT:  Did he do a report?

19          MR. NICOLETTI:  I'm not sure when the reports are due,

20   but --

21          THE COURT:  The reports were due the 9th.

22          MS. RUSSELL:  Yeah.

23          MR. NICOLETTI:  The reports have been done.

24          MS. RUSSELL:  We received a declaration with an

25   electronic signature of Mr. Paige on it.

1          THE COURT:  Well --

2          MS. RUSSELL:  And a couple of attachments.  Not

3    everything that he has referenced in the -- the report is

4    apparently this declaration.  And the things that he relied on

5    in support of the statements he makes in that declaration are

6    not all attached.  There are some things attached, but not

7    everything that he purports to rely on in the declaration.

8          THE COURT:  I see a fight coming down the road --

9          MS. RUSSELL:  Yeah.

10         THE COURT:  -- so I'm saying that this case seems to

11   rely very strongly on technical information, technical

12   testimony, and without -- if that's not sufficiently disclosed,

13   it is not coming in.

14         MR. NICOLETTI:  Understood, your Honor.

15         THE COURT:  So --

16         MS. RUSSELL:  Your Honor?

17         THE COURT:  Yes.

18         MS. RUSSELL:  And not to change the subject.  But to

19   respond, if I may, to what we were originally talking about

20   with regard to trying to make them do some extra work to give

21   us the thing that we're really looking for in discovery, the

22   thing we're looking for is the thing they told you they had

23   when they came in here and asked you if they can issue a

24   subpoena.  That's what we are -- they said they had a PCAP, a

25   thing, that they compared to the original movie and made an

1    assessment that there had been copyright infringement.

2           All we want to know is we want to see that thing.  And

3    it was the -- we're not asking them to make something new or

4    cost whatever money they are saying they have to spend.  This

5    is a thing that they came in and made representations regarding

6    under Rule 11 when they filed their complaint and then when

7    they came in here and asked you if they could issue the

8    subpoena two years ago.

9           So all we have ever wanted is, okay, show us the

10   piece, show us the PCAP that you took and you compared to the

11   original work in order to make this assessment and file this

12   case and get a subpoena.  We don't want to -- we don't need

13   anything new.

14          THE COURT:  Well, they are saying that's on that.

15          MR. NICOLETTI:  But it -- our expert has looked at it.

16   It isn't.  And I understand that Mr. Nicoletti may believe

17   that.  As he said, maybe he has some technical confusion or --

18   I am not -- you know, whatever he's -- you know, he's made it

19   pretty clear that it is very complicated.

20          But what our expert has said is this piece that we're

21   looking at, what they claim later is, oh, well, we think we

22   have some part of something or whatever.  The thing that they

23   said they had when they filed the complaint and the thing they

24   said they had when they asked for the subpoena, we don't have

25   it.

1    THE COURT:  Okay.  I don't know the answer to that --

2    MS. RUSSELL:  So --

3    THE COURT:  -- because, as you say, your expert told

4 you that.

5    MS. RUSSELL:  Yeah.

6    THE COURT:  So I don't have any of that evidence

7 before me.  Mr. Nicoletti is saying, yes, the spreadsheet tells

8 you.  You're saying, no, it doesn't.

9    MS. RUSSELL:  Yeah.

10    THE COURT:  I have no way of knowing the answer to

11 those -- that question.

12    MS. RUSSELL:  Well --

13    THE COURT:  So I cannot grant the motion or deny it.

14 I can't -- you know, the problem is I don't know the answer to

15 that question.

16    MS. RUSSELL:  I'm sure -- I'm absolutely certain that

17 you don't and I don't.  But when my expert tells me that, and

18 we have had many conversations --

19    THE COURT:  Well, we have nothing from your expert in

20 here.

21    MS. RUSSELL:  Oh, no, I understand.

22    But what I am saying is, we have gone to Mr. Nicoletti

23 a number of times.  And even before my involvement, I think, in

24 this case, Mr. Phillips had done so to say this is the

25 PCAP -- this is the thing we're looking for, and we still don't

1    have that thing.

2          THE COURT:  Well, see, that's the fact that is at

3    contest, do you have it or do you not have it.  Mr. Nicoletti

4    says the spreadsheet says it.  You say it doesn't.  I don't

5    have any facts on which I can base that decision.

6          MS. RUSSELL:  Well --

7          THE COURT:  I can't -- I can't make the decision.

8    You're making a representation, he's making a representation.

9    Yours is based on your expert.  I don't have that expert.  I

10   have no affidavit.  I have no testimony.  I have nothing before

11   me that would say -- I have nothing but argument of counsel

12   before me so I cannot make a judgment based on your

13   representation of what the expert said that it is more likely

14   than not than what Mr. Nicoletti said.

15         Do you see what I am saying?  Your argument here,

16   we're kind of wasting time because I don't have that insight

17   into that.  That is a technical piece of information that I

18   don't have.

19         MS. RUSSELL:  I understand, your Honor.  But I don't

20   know how I resolve it if Mr. Nicoletti doesn't go back to his

21   people and say -- well, you know, if he is saying we gave

22   you -- there is a universe of stuff.  That's like saying, we

23   gave you a truckload of boxes, but we won't tell you which

24   thing in there we rely on.

25         THE COURT:  I don't know that that is the case.

```
 1              MS. RUSSELL:  Well --

 2              THE COURT:  Mr. Nicoletti --

 3              MS. RUSSELL:  -- I understand.

 4              THE COURT:  -- is telling me that it is like a

 5    Whitler's -- what do you call those? -- Whitman Sampler where

 6    the name of the chocolate is on the bottom of the box.

 7              MS. RUSSELL:  Right.

 8              THE COURT:  So I don't know whether it is a Whitman

 9    Sampler box or just a Forrest Gump box --

10              MS. RUSSELL:  Well, we're --

11              THE COURT:  -- where the piece of chocolate, you don't

12    know what you are going to get.

13              MS. RUSSELL:  Right.  But we just don't understand why

14    they can't point to it and say, it is that piece we compare.

15              THE COURT:  Okay.  We're not getting anywhere here.

16              MS. RUSSELL:  Okay.

17              THE COURT:  We're not getting anywhere.  I want to

18    move the ball down the field.

19              MS. RUSSELL:  Okay.

20              THE COURT:  All right?  Then what I -- now you have

21    got whatever disclosures they're going to make.  They're

22    adequate, they are not adequate.  You know, to some extent if

23    they aren't adequate, then that will redound the problem of the

24    plaintiff.

25              You know what, the defendant's expert disclosures are
```

1    coming up on the 9th.

2         MS. RUSSELL:  Yes, we'll be making them.  We'll be

3    disclosing at least an expert.

4         THE COURT:  Okay.  And then you have depositions of

5    experts, and we'll see what it is.  You know, I just -- I just

6    don't have enough information to grant this motion at this

7    time.

8         So what I will do is I'm going to deny the

9    motion -- well, that was point number one.

10        What was the next one?  I just don't have the

11   technical information.  So let's -- as to Interrogatory Number

12   25 it's denied without prejudice.

13        Okay.  What else have we got?

14        MS. RUSSELL:  The other --

15        THE COURT:  Anything else?

16        MS. RUSSELL:  The other issue was -- if we're

17   prioritizing, the second issue was the -- getting the full

18   disclosure of the contact information for the list of names

19   that were identified.

20        THE COURT:  Why do you need that?  I never quite

21   understood why you need that.

22        MS. RUSSELL:  Well, we had asked for it

23   because -- because these are just names.  If we're going to do

24   any sort of investigation into whether these are

25   people -- these are people who allegedly contributed to the

1   creative process, and we can't even do like a background check

2   to make sure that that's true or that these people are those

3   kind of people that do that kind of work or --

4           THE COURT:  Well --

5           MS. RUSSELL:  -- to see if there is anything.

6           THE COURT:  -- but why do you need that?

7           MS. RUSSELL:  Because there are questions as to

8   whether or not any of those people may have property rights in

9   these copyrights.  And I understand that the plaintiff has

10  contended that they do not.  But what we have wanted to do is

11  to at least figure out who these people are and, you know, do

12  they work in this industry and get some information about

13  what -- that they are --

14          THE COURT:  I just don't -- I really don't see why

15  that is relevant.  I mean, I don't see --

16          MS. RUSSELL:  It is relevant.

17          THE COURT:  Plaintiff has assert -- has registered a

18  copyright (unintelligible).

19          MS. RUSSELL:  Oh --

20          THE COURT:  Right?

21          MS. RUSSELL:  They have registered the copyright.  But

22  if -- even if you register the copyright, if it turns out that

23  you didn't have the right to register that copyright, if in

24  fact you didn't hold sufficient rights to do that, then that is

25  a problem.

1          THE COURT:  Well --

2          MS. RUSSELL:  So we can have all these people who are

3     allegedly involved in the creative process.  They can have

4     rights in that copyright.  That's the reason that we ask --

5          THE COURT:  I think this is very far afield.  I

6     really -- we have got to wrap this up.  I mean, this is a

7     registered copyright.  You are going to go behind the copyright

8     now and claim that they don't have the proper registration in

9     this copyright?  I mean, this seems to me to be far afield.

10          Is there some kind of affirmative defense that's

11     alleged that they don't have copyrights and -- copyright

12     interest in this case?

13          MS. RUSSELL:  Well, if indeed any of these people do

14     have rights, then that is an affirmative defense, and that's

15     something we need to look into --

16          THE COURT:  I --

17          MS. RUSSELL:  -- to see if these are --

18          THE COURT:  This is very far afield.  If you get

19     enough information -- no, this is too far afield.  The real

20     question -- we need to wrap this up.  This is now a two-year-

21     old case.  It has cost your client a lot of money, and -- which

22     you have mentioned from -- numerous times, and we need to move

23     on with this thing.  They have a registered copyright.  I'm not

24     going to go beyond that.  We are not going to have a trial on

25     whether that copyright is properly registered.

1        So let's move on.  Next.

2        MS. RUSSELL:  I believe those are the issues that were

3  raised in order.  We did -- you know, the -- I mean, you have

4  just ruled on it.  So, I mean, they -- we asked for names and

5  addresses for those people, and they gave us a list of names,

6  and that's not a complete answer to the interrogatory, but --

7        THE COURT:  Well, I just think it is well beyond the

8  scope of what is relevant to claims and defenses in this case

9  as they are pled.  I just think it is sort of fishing for a

10  possibility, and it is way past the time for fishing at this

11  point in the game, so let's move on.

12        Anything else?

13        MS. RUSSELL:  The other issue that was raised was when

14  we are talking about IPP and how they are listed in the -- in

15  the discovery responses.  We did have -- there have been --

16  this has been a point of contention for some time.

17        And then after I became involved in the case, we

18  recently had a telephone conference about it.  And I believe in

19  Malibu's response they contended that we are, you know, making

20  a big deal about it doesn't matter which corporate entity, what

21  you call it.  And it does matter.  It is not just one thing.

22  If it is IPP, is it IPP Limited?  Is it IPP something else?

23        All we wanted to know is, what are you claiming is the

24  corporate name that you are relying on?  So when we talked --

25  and that's not picking nits, that's a very specific thing.

1    We don't want to hear later on in this case that, oh,

2    well, you know, IPP Limited did this, but IPP UG Pancake did

3    something else.  We just want to know what corporation are you

4    taking about because it appears to us that your --

5    THE COURT:  Amend your answers to supplement -- serve

6    supplementary answer to interrogatories identifying that entity

7    by its proper legal name.  And referring back to previous

8    answers, verify that that proper legal name was the entity that

9    was referred to in those other ones so we're not having any

10   ambiguity about whether it is -- there are multiple different

11   IPP entities working around.

12   MR. NICOLETTI:  Judge, if I can just comment.  It is

13   not that simple.  I understood what you just said.  However,

14   the online copyright infringement agreement that forms the

15   basis for IPP doing work for Malibu Media was entered into by a

16   company by the name of IPP International UG.  So we can't just

17   change -- when they claim that there is confusion, it is like,

18   what kind of car do you drive?  I drive a GM.  Well, I don't

19   know what a GM is.  It is General Motors.  It is an

20   abbreviation.

21   So when the German registry identifies the company, it

22   abbreviates.  It says, IPP INT UG.  That's the -- that's what

23   they are talking about.  So if we amend the answers to say that

24   we're referring to IPP INT UG, then all of a sudden they're

25   going to argue that, well, we don't have an agreement with IPP

1  INT UG, it is a different company.  They are all -- it is the

2  same entity.  There is only one IPP entity.  There is no

3  confusion over it.

4      THE COURT:  Then please serve a supplemental answer

5  that says, there is only one entity that we have entered into a

6  contract with, whatever the answers to interrogatories apply

7  to, that has performed work for us.  Its full name is whatever

8  it is, period.  And that is the entity to which we are

9  referring in all of our previous answers to interrogatories.

10     MR. NICOLETTI:  And, your Honor, that's what our

11 answer was to the interrogatory.

12     MS. RUSSELL:  And, your Honor --

13     THE COURT:  Well, I don't see it.  Where is the answer

14 to -- you mean your email that you include as an exhibit,

15 Exhibit A, says -- oh, Mr. Phillips says, I forgot to include

16 that PN agreed to amend any answers that refer to IPP INT UG as

17 any other name, including IPP (unintelligible) or IPP

18 International UG?

19     MR. NICOLETTI:  I --

20     THE COURT:  Let's just clarify this and put this issue

21 to bed.

22     MR. NICOLETTI:  But --

23     MS. RUSSELL:  It is not as simple as an abbreviation,

24 your Honor.  And as we mentioned in our motion, Mr. Fieser's

25 declaration, which was filed as -- it is you ECF Document

1    Number 2 in this case, says his employer is IPP Limited.  That

2    is not just an obvious abbreviation of IPP International UG,

3    whatever.  It is -- all we wanted to make sure is we don't get,

4    you know, spun around later with someone saying, oh, well,

5    that's different.  And since they filed the declaration and

6    this man says he works for IPP Limited, we just want to make

7    sure.  So all we asked him to do was, even once he figured out

8    what the answer was, I'm going to do a word search, you know,

9    do a find and replace something.  We're not asking him to

10   reinvent the wheel.  But, you know, the corporate name, it is

11   an important thing.

12           THE COURT:  If you think you need to amend your

13   answers, file a supplemental answer to clarify this.  Just

14   clarify it with a verified supplemental answer.

15           MR. NICOLETTI:  Just one -- just one supplemental

16   answer, your Honor, as opposed to going back and changing --

17           THE COURT:  I don't think -- I think at this point

18   going back and changing and re-serving and re-filing 20

19   different things would be really -- let's simplify it.

20           MR. NICOLETTI:  And, your Honor, that's what I

21   offered, and counsel rejected that.  I would --

22           MS. RUSSELL:  No.

23           MR. NICOLETTI:  I would file a notice saying that when

24   we're talking about IPP --

25           THE COURT:  Not a notice, an amended verified

1    supplemental answer --

2            MR. NICOLETTI:  Okay.

3            THE COURT:  -- to an interrogatory.

4            MS. RUSSELL:  That's what we wanted.

5            THE COURT:  Amended verified supplemental answers to

6    interrogatory in which you simply, at the Court's direction,

7    identify this one entity, whether it is referred to as X, Y, Z,

8    T, it is the same entity.

9            MS. RUSSELL:  And, your Honor --

10            MR. NICOLETTI:  In one paragraph, your Honor, not a --

11            THE COURT:  Ms. -- counsel?

12            MS. RUSSELL:  That's what we asked for.  And what we

13    were offered was, let's do a stipulation.  And my concern

14    was --

15            THE COURT:  No, not a stipulation.

16            MS. RUSSELL:  -- if it is not a verified response --

17            THE COURT:  Because you don't know.  You don't have

18    any basis for a stipulation.

19            MS. RUSSELL:  Right, since I don't know.  And so --

20    and that's all I wanted was a verified response.

21            THE COURT:  One answer, one supplemental answer, in

22    which you set this fact out verified by an appropriate person,

23    and then it is done.

24            MS. RUSSELL:  Yes.

25            THE COURT:  So it is granted as to -- where would that

1    be?  What's that interrogatory, by any chance?

2            Grant as to -- granted --

3            MS. RUSSELL:  Okay.

4            THE COURT:  -- as to the issue of the corporate name

5    of IPP.  The defendant will serve a verified supplemental

6    interrogatory answer setting out the fact that there is one

7    entity with whom the plaintiff has contracted.  And identify

8    the full corporate name and the other names that have been used

9    by that entity in this lawsuit.

10           MR. NICOLETTI:  Fair enough, your Honor.

11           THE COURT:  Get that done.

12           MS. RUSSELL:  Perfect.

13           THE COURT:  Okay.

14           MS. RUSSELL:  Perfect, your Honor.

15           THE COURT:  Okay.  Next?

16           MS. RUSSELL:  I believe -- I can review, but I think

17   that's the end of the issues that were raised in our motion.

18   I'll verify that, but I think we have covered everything.

19           THE COURT:  Okay.  Good.

20           MS. RUSSELL:  I believe so.

21           THE COURT:  So grant -- that motion is granted in

22   part, denied in part, and denied without prejudice so -- as

23   stated on the record.

24           MS. RUSSELL:  Thank you, your Honor.

25           MR. NICOLETTI:  Thank you.

1    THE COURT:  Then we have the status hearing on the

2    12th of February.  I think we better keep that because I think

3    that -- I want to see how things are developing on the expert

4    witness front.

5    MS. RUSSELL:  I agree, your Honor.

6    THE COURT:  That is at 10:30.  That still work for

7    everybody?

8    Mr. Nicoletti, you're going to be on the line.  Unless

9    you want to be here in person, then that's --

10    MR. NICOLETTI:  No, I would prefer the telephone, your

11    Honor.

12    THE COURT:  Okay.

13    MS. RUSSELL:  Your Honor --

14    THE COURT:  Well, we'll see.

15    MS. RUSSELL:  -- I hate to --

16    THE COURT:  Yes, ma'am.

17    MS. RUSSELL:  -- be the -- I hate to be the local

18    person asking to move it.  I have a matter in front of Judge

19    Darrah at 9:30, and so we -- 10:30 is great, but just -- I

20    would like to put the Court on notice that there is a chance I

21    will be running in right at the --

22    THE COURT:  Well, if Mr. Nicoletti is not here, he's

23    on the phone --

24    MS. RUSSELL:  Okay.

25    THE COURT:  -- then he can stand by for a few

1  minutes --

2          MS. RUSSELL:  Okay.

3          THE COURT:  -- while we wait for you to get --

4          MR. NICOLETTI:  That's fine.

5          MS. RUSSELL:  Judge Darrah usually moves pretty

6  efficiently.  But just that's where I will be if I am running

7  late.

8          MR. NICOLETTI:  I'm flexible, your Honor.

9          THE COURT:  Okay.  All right.  Well, always

10 interesting.

11         Anything else then?

12         MR. NICOLETTI:  Nothing else.

13         THE COURT:  Status remains set for the 12th.

14         MS. RUSSELL:  Thank you, your Honor.

15         THE COURT:  See you then.

16         MR. NICOLETTI:  Thank you.

17     (Which concluded the proceedings.)

18                          CERTIFICATE

19         I certify that the foregoing is a correct transcript

20 from the digital recording of proceedings in the above-entitled

21 matter to the best of my ability, given the limitation of using

22 a digital-recording system.

23 */s/Pamela S. Warren*                January 27, 2016
   Official Court Reporter                   Date
24 United States District Court
   Northern District of Illinois
25 Eastern Division