# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **MALIBU MEDIA LLC,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.  13 C 6312** |
| **v.** | ) | |
| | ) | **Magistrate Judge Geraldine Soat Brown** |
| **JOHN DOE,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are cross-motions for summary judgment by plaintiff Malibu Media, LLC [dkt 147] and defendant John Doe [dkt 144]. Also pending are defendant's motions to Strike Certain Portions of Plaintiff's Statement of Undisputed Material Facts [dkt 160] and to Strike Portions of Plaintiff's Local Rule 56.1(b)(C)(3) Statement [dkt 161]. For the reasons stated below, plaintiff's motion for summary judgment is denied. Defendant's motions are granted.

## BACKGROUND

Plaintiff Malibu Media, LLC ("Malibu") alleges that between May 27, 2013 and July 30, 2013, the defendant infringed Malibu's copyright in 24 movies by downloading them from the internet using a network known as "BitTorrent." [Dkt 1 at 6; 148 ¶¶ 6-7 n.2, 22-23.][1] Malibu alleges that it identified the defendant by an Internet Protocol ("IP") address. (Dkt ¶ 5.) The defendant was allowed to proceed anonymously as "John Doe." (Dkt 17.)

The defendant ("Doe") denies Malibu's allegations [dkt 19] and contests Malibu's method of proof. [Dkt 145.] Discovery, including expert discovery, has concluded. The cross-motions rest

---

[1] Because of the large number of filings on the motions, record references in this opinion will be to docket number and page or paragraph number.

on the question of whether Malibu has, or can, establish proof of infringement by admissible evidence.

## JURISDICTION

The court has federal subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 because Malibu claims copyright infringement. The parties have consented to the jurisdiction of the magistrate judge. [Dkt 22.]

## LEGAL STANDARD

Summary judgment on all or part of a claim or defense is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To oppose a motion for summary judgment successfully, the responding party may not simply rest on its pleadings, but rather must submit evidentiary materials showing that a material fact is genuinely disputed. Fed. R. Civ. P. 56(c). A genuine dispute of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the responsibility of identifying applicable evidence. *Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). In determining whether a genuine dispute of material fact exists, the court construes all facts and draws all reasonable and justifiable inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255.

Cross-motions for summary judgment do not, of course, waive the right to a trial. *Marcatante v. City of Chicago*, 657 F.3d 433, 438-39 (7th Cir. 2011). Rather, on cross-motions for

summary judgment, the same standard in Rule 56 is applied to each motion to determine whether there is a genuine dispute of material fact and whether judgment should be entered as a matter of law. *Id.*; *Cont'l. Cas. Co. v. Nw. Nat'l. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). In ruling on each cross-motion for summary judgment, the court draws inferences in favor of the party against whom the motion under consideration is made. *Siliven v. Indiana Dept. of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011).

## BACKGROUND

Fact discovery was ordered completed by November 19, 2014. [Dkt 98.] The court entered an agreed order for expert discovery which required Malibu to serve its Rule 26(a)(2) disclosures by January 9, 2015, and Doe to serve his Rule 26(a)(2) disclosures by February 9, 2015. [Dkt 122.] Any motions with respect to expert testimony were to have been filed by April 3, 2015. [*Id.*]

Malibu served one Rule 26(b)(2) disclosure, in the form of a Declaration of Patrick Paige dated January 9, 2015. [Dkt 161-1.] Doe deposed Paige on February 17, 2015. [Dkt 160-2.] Doe served an expert report by Delvan Neville dated February 9, 2014. [Dkt 146-2.] Malibu's counsel took Neville's deposition on March 19, 2015. [Dkt 148-19.] At a hearing on March 26, 2015, the parties reported that they were unable to reach a settlement, and a schedule was set for filing dispositive motions. [Dkt 139.] Malibu did not ask leave to serve any additional expert disclosures or to serve a rebuttal expert report.

## FACTS

It is undisputed that Malibu owns the copyright in the 24 movies at issue and that it did not

3

give Doe permission to copy or distribute the works. [Dkt 163 ¶¶ 4, 72.] The issue is whether Malibu has proven or can prove by admissible evidence that Doe copied or distributed the works.[2]

## I.    Malibu's evidence

*Collette Pelissier Field's declaration about Malibu and its products*

Malibu submits the declaration of its co-managing member Collette Pelissier Field, who founded Malibu with her husband Brigham Field in 2011. [Dkt 148-1 ¶¶ 2,4.] According to Field, Malibu sells its product, "erotic movies," by operating a subscription-based website using the domain name X-art.com. [Dkt 148-1 ¶¶ 6, 15.] Field states that Malibu owns the copyright in the works and never authorized Doe to use or distribute them. [*Id*. ¶¶48-58.] The declaration appears to be a pro forma document that could be filed in any of Malibu's cases.[3] There is nothing in that declaration that is particular to this case except ¶ 48 which lists the works allegedly infringed. There is nothing in the declaration to establish that Doe copied or distributed any of Malibu's works.

*Malibu's technical evidence*

Malibu has presented no evidence that any part of its works was found on Doe's computers or other electronic devices that Malibu subjected to forensic examination. In addition, Doe's

---

[2]  Malibu has stipulated that it will seek only a maximum of $750 in damages per infringement (a maximum total of $18,000), but reserves the right to recover costs and attorney's fees under 17 U.S.C. § 505. [Dkt 61.]

[3]  Malibu has filed a considerable number of virtually identical lawsuits around the country. *See Malibu Media, LLC v. Doe*, No 15 Civ. 4369 (AKH), 2015 WL 4092417, at *3 (S.D.N.Y. July 6, 2015) (stating, "Malibu is a prolific litigant: between January and May 2014, for example, Malibu was responsible for 38% of copyright lawsuits filed in the United States.")

statement of undisputed facts includes the statement, "There are no copies of any of Malibu Media

works on any of Doe's devices." [Dkt 153 ¶ 5.] Malibu responds simply, "Disputed," without

citing anything in the record to support that statement. [*Id.*] That fact is, therefore, deemed

admitted. Fed. R. Civ. P. 56(e)(2); N.D. Ill. L.R. 56.1(b)(3)(B); *Cracco v. Vitran Exp., Inc.*, 559 F.3d

625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth

in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted

for purposes of the motion.").

Instead, Malibu argues that technical evidence gathered by its forensic investigators located

in Germany demonstrates that Doe copied and distributed parts of Malibu's movies. In an earlier

submission in the case, Malibu summarized its proposed proof:

> Data sent through the internet is delivered in the form of "packets" of
> information. PCAP stands for "Packet Capture." A PCAP is a computer file
> containing captured or recorded data being transmitted between two computers. A
> "Packet Analyzer" records packets of data being transmitted between two computers
> over a network, such as the internet, and saves it in a computer file called a PCAP.
> Packet analyzers also enable users to read and analyze PCAPs. IPP's [Malibu's
> forensic investigator] data collection system uses a proprietary packet analyzer and
> TCPDump to record the entire infringing transaction. TCPDump is an open source
> free packet analyzer.
>
> . . . The proof of infringement is a PCAP recording of Defendant's IP Address
> sending a piece of the copyrighted work to the MySQL server. The PCAP recording
> speaks for itself. Testimony about what is contained in the PCAP can be elicited at
> trial by either IPP's employee, Mr. Fieser, Malibu's computer forensic expert Mr.
> Patrick Paige, Excipio's independent contractor, Mr. Michael Patzer, or via a
> demonstration during trial by any other witness. The demonstration would merely
> require the witness to install TCPDump so that he or she could read and analyze the
> PCAP.

[Dkt 40 at 3-4 (footnotes and emphasis omitted).]

Malibu also stated in an earlier submission, "Defendant infringed twenty four (24) works.

5

Defendant sent Excip[i]o's servers 301 'pieces' of these works. . . . At trial, Plaintiff will introduce one PCAP per infringed work and the log report." [Dkt 94-1 at 14.] Malibu objected to Doe's request that it produce all of the PCAPs allegedly captured because "IPP charges Malibu by the hour to extract the PCAPs." [*Id.*]

 As evidence on the cross-motions, Malibu attaches the declarations of Tobias Fieser, Michael Patzer and Patrick Paige. [Dkt 148-8, 148-9, 148-13.] Doe has moved to strike Fieser's and Patzer's declarations, parts of Paige's declaration, and all of Malibu's statements of fact that rely on them. [Dkt 160, 161.] Doe argues that the testimony of those declarants was not timely and properly disclosed under Fed. R. Civ. P. 26(a)(2) and, as a consequence, Fed. R. Civ. P. 37(c)(1) precludes Malibu from using that evidence. [*Id.*]


Tobias Fieser declaration

Malibu's motion for summary judgment attaches the "Declaration of Tobias Fieser in Support of Plaintiff's Motion for Leave to take Discovery Prior to a Rule 26(f) Conference," dated September 3, 2013. [Dkt 148-8.] That is the same declaration Malibu filed in September 2013 immediately after the case was filed. [Dkt 2-4.] Like Field's declaration, it is a pro forma document that has no particularized statements with respect to Doe except to the extent that it refers to an "Exhibit A," which is described in a footnote as referring to the corresponding exhibit to the Complaint. [Dkt 148-8 ¶ 13 n.1] No exhibits are actually attached to the declaration. [Dkt 148-8.] Fieser does not state that he actually has read the Complaint in this case or that he prepared Exhibit A to the Complaint. [*Id.*]

Fieser states that he is employed by IPP, Limited ("IPP"), a company organized under the

laws of Germany. [*Id*. ¶ 4.] Among other things, IPP provides forensic investigation services to copyright owners. [*Id*. ¶ 5.] As part of his duties, Fieser monitors the BitTorrent file distribution network and identifies the IP addresses being used by infringers to distribute the copyrighted works. [*Id*. ¶ 6.] He states, "IPP tasked me with effectuating, analyzing, reviewing and attesting to the results of this investigation." [*Id*. ¶ 8.] He used forensic software to scan the BitTorrent distribution network for infringing transactions and IP addresses being used on the BitTorrent network to distribute Malibu's works. [*Id*. ¶ 9.] He declares that the IP address identified on Exhibit A to the Complaint connected to IPP's investigative server in order to transmit a copy or portion of a copy of each media file identified by the hash values on Exhibit A to the Complaint. [*Id*. ¶ 13.] He states that IPP's software downloaded one or more bits of each file listed on Exhibit A from the IP address referenced on Exhibit A. [*Id*. ¶ 15.]

As mentioned above, Malibu did not serve a Rule 26(a)(2) disclosure with respect to Fieser.


<u>Michael Patzer declaration</u>

The Declaration of Michael Patzer is dated March 17, 2015. [Dkt 148-9.] Patzer's declaration does not relate specifically to Doe's alleged activity except to refer to a spreadsheet exhibit described below. [*Id*.] Rather, it is an overview of the technical process used to link the IP address identified with Doe's internet access to the digital media file described by Fieser. [*Id*.] Patzer states that he is an independent contractor for Excipio Gmbh ("Excipio") a German company. [*Id*. ¶ 5.] He designed, implemented, maintained, and monitors the data collection system that Excipio owns and uses "to identify the IP addresses used by people to commit copyright infringement via the BitTorrent protocol." [*Id*. ¶ 6.] Excipio licenses its proprietary software to IPP.

7

[*Id*. ¶ 7.] He declares that "Excipio's data collection system accurately collected and recorded evidence proving that the defendant infringed Plaintiff's copyrighted work." [*Id*. ¶ 10.] His declaration includes a 18-paragraph description of the technical process under which Excipio's software collects evidence for Malibu. [*Id*. ¶¶ 11-28.]

As described by Patzer, the process begins when IPP gives Excipio titles of Malibu's works. Excipio then searches torrent websites for the titles. When there is a match, Excipio "joins the swarm" distributing a computer file. Each piece of a computer file and the entire file has its own hash value. Excipio's software downloads a piece or pieces of the file from the computer connected to the internet through the defendant's IP address. The process is recorded in Excipio's database. [*Id*. ¶¶ 11-15.] Excipio uses a proprietary packet analyzer and TCPDump to record infringing transactions in PCAPs. A PCAP is a computer file containing recorded data transmitted between two computers, in the form of ones and zeros. He states that each infringing transaction is recorded on a MySQL server log file, which is attached as Exhibit A to his declaration, on which each entry relates to a specific PCAP file in Excipio's possession. [*Id*. ¶¶ 16-21.]

As a result of this process, he produces one technical report per movie, one ".tar file" for each infringed work, and one ".torrent file" for each infringed work. [Id. ¶ 28.][4] He states that, if asked, he could bring the actual computer files to trial. He also states that he has testified "as a fact witness" in a trial of consolidated cases for Malibu, and that he is not paid by Malibu for his testimony. [Id. ¶¶ 26, 29-30.]

---

[4] An exhibit to Patzer's declaration states that "CDs containing the following computer evidence were Fed Ex-ed to the Court on April 17, 2014. These CDs contains [sic]: one PCAP per infringed work; one technical report per infringed work; one .tar file for each infringed work; and one .torrent file for each infringed work." [Dkt 148-11.] The docket does not reflect any such filing, nor has this court received any such CD.

Malibu did not serve a Rule 26(a)(2) disclosure for Patzer. Doe states that on March 17, 2015, his attorneys received a PDF containing Patzer's declaration from Malibu's attorneys with no explanation of its purpose. [Dkt 160 at 2.] Malibu did not move for leave to serve an additional expert report.

<u>Patrick Paige declaration in support of Malibu's motion for summary judgment</u>

The Declaration of Patrick Paige submitted in support of Malibu's motion for summary judgment is dated April 17, 2015. [Dkt 148-13.] Unlike the other declarations, Paige's declaration is focused on this case and, particularly, Doe's denial of liability and Doe's position that an unknown device accessed his router. [Dkt 148-13 ¶¶ 60-68.] Doe points out that this declaration contains material in addition to the declaration dated January 9, 2015 that Malibu served as its Rule 26(a)(2) expert report. [Dkt 160 at 8-9.]

Paige states that he was a police officer and detective in a computer crimes unit until 2011, taking and teaching various courses relating to computer forensics. [Dkt 148-13 ¶¶ 2- 9.] He founded Computer Forensics, LLC, where he is currently employed. [*Id*. ¶ 10.] He has testified in numerous cases as an expert in computer forensics. [*Id*. ¶ 12.] He states that he tested IPP's system by transferring public domain movies to his local computer to make .torrent files, which he then uploaded into torrent websites. [*Id*.¶¶ 25-35.] IPP captured the movies he "seeded." [*Id*. ¶¶ 33-35.] He does not state the date when he conducted that test, nor does he state whether the equipment used is the same system Excipio licensed to IPP in 2013 as described by Fieser and Patzer.

In June 2014, he received a package containing hard drives from Doe's computer, and on September 22, 2014, he received a DVD with a data export of Doe's iPad. [*Id.* ¶¶ 39-41.] He

examined the hard drive images using forensic software and searched for all devices that had been connected to Doe's hard drive.  [*Id*. ¶¶ 42-43.]  Notably, although he looked for evidence that Malibu's copyrighted works were or had been on Doe's devices [*id.* ¶ 38], he does not say that he found any.

He states that he found evidence that one external storage device and one internal hard drive that were capable of storing files downloaded via BitTorrent had been connected to Doe's computer, but they had not been produced by Doe.  [*Id*. ¶¶ 44-45.]  He also found files indicating Doe had an interest in peer-to-peer file sharing, digital forensics, BitTorrent, PCAPs, virtual machines, and virtualization software.  [*Id*. ¶¶ 46-52.]  A virtual machine is an emulation of a computer system which imitates the structure and functions of a real computer system.  [*Id*. ¶ 53.]  He found several virtual machines on one of Doe's hard drives, but not the program "VMWare" he believes was used to create them.  [*Id*. ¶¶ 54, 56-58.]  He believes that a hard drive used in connection with the virtual machines was not produced or the visualization program was deleted.  [*Id*. ¶ 59.]  He is paid on an hourly basis by Malibu for pretrial investigative work and trial testimony.  [*Id*. ¶ 69.]

In a section that was not included in his January 9 declaration, Paige opines that "Defendant is the infringer."  [*Id*. ¶ 61.]  He states that he has reviewed the screen shot Doe produced, which Doe claims shows that an unknown device accessed his router, and, in his opinion, the screen shot "does not remotely suggest a WiFi hacker."  [*Id*. ¶¶ 63-64.]

Patrick Paige declaration in opposition to Doe's motion for summary judgment

In opposition to Doe's motion for summary judgment, Malibu filed yet a third Declaration of Patrick Paige, this one dated April 20, 2015.  [Dkt 152-2.]  The third declaration adds two

paragraphs opining that "[i]t is possible to delete evidence from the unallocated space of a computer without leaving any detectable proof of the deletion," and four paragraphs opining that there is "woefully insufficient evidence" to support Doe's statement that the two unproduced devices were last used prior to the time of the claimed infringement.  [*Id*. ¶¶ 60-61, 71-74.]

## II.    Doe's evidence

Doe denies that he downloaded any of Malibu's works.  [Dkt 146-1 at 105.]  Doe submits Neville's expert report, in which Neville states that he operates a computer forensics company specializing in BitTorrent.  [Dkt 146-2 at 1. ]  He was retained to conduct a forensic examination of Doe's devices.  [Id.]    He opines that:  1) there is no evidence that Malibu's works are now or ever have been on Doe's devices; 2) there is no evidence that BitTorrent was used for copyright infringement by Doe's devices, and no evidence that BitTorrent was installed on these devices during the period of infringement (May 27 through July 30, 2013); 3) the two devices identified by Paige as having been connected to Doe's computer but not produced in discovery were last used in 2012, which is before the infringement period and before the date Malibu says the works at issue were created; and 4) the virtual machines found on one of Doe's external drives were last used no more recently than September 30, 2010, which is the expiration date for the one-year student license for VMWare that Doe would have received as a graduate student.  [*Id*. at 2-3.]

## III.    Malibu's motion for summary judgment

Considering all of Malibu's evidence, including the Fieser, Patzer, and Paige declarations Doe has moved to strike, in the light most favorable to Doe, Malibu's summary judgment motion

must be denied. Even if those contested declarations are considered, Malibu has not eliminated all material questions of fact about whether there was actionable infringement and, if so, whether Doe was the infringer.

"To establish copyright infringement, [a party] must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir 2007) (quoting *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 US 340, 361 (1991)). The first element is not disputed here. The second is disputed.


A.    What is the evidence that Doe copied or distributed Malibu's works?

Unlike other cases, Malibu has no evidence that any of its works were ever on Doe's computer or storage device. *See, e.g.*, *Malibu Media, LLC v. Winkler*, No. 13-cv-03358-WYD-MEH, 2015 U.S. Dist. LEXIS 91305, at *14-15 (D. Colo. June 24, 2015) (Malibu's expert Paige found evidence that at least 28 of the 39 films at issue had once existed on the defendant's computer). Here, Paige says there is evidence that at one time two other devices which have not been produced were connected to the hard drive of Doe's computer. Doe rebuts an inference of spoliation with Neville's report stating those devices were last used in connection with Doe's computer in June 2012, which is before the works at issue were created and one year prior to the alleged infringement period. Malibu responds with Paige's speculation in his last declaration that the devices "could have been connected to other computers after June 14, 2012," which is based on further speculation that Doe had other computers that were not produced or that the computers that he did produce were "modified in such a way to cause Plaintiff's Works to be undetectable." [Dkt 152-2 ¶¶ 73-74.]

12

Malibu admits that there is no evidence of visualization software on Doe's computer, and not even any evidence of the deletion of visualization software. [Dkt 151 at 5.] Malibu says that is "beyond fishy," and speculates that Doe must have deleted visualization software from his computer in some way that hides the fact that it was deleted, and then extends the speculation to suggest that Doe must have done that deletion to hide his infringement of Malibu's works. [*Id*.] That is not evidence that Doe copied or distributed Malibu's works.

Malibu's proof that Doe copied its works relies, then, on the evidence it tenders to show that a computer linked to Doe's IP address distributed one or more bits of each of the works. Even if that disputed evidence were accepted, the IP address alone is not enough to impose liability on Doe. An IP address discloses the location of the internet line used for the transaction (*see, e.g.*, *TCYK, LLC v. Does 1-87*, No 13 C 3845, 2013 WL 3465186, at *2 (N.D. Ill. July 10, 2013)), but it does not identify the individual person who engaged in the transaction. "An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones." *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F. R. D. 80, 84 (E.D.N.Y. 2012).[5]

Doe denies that he downloaded any of Malibu's works and states that he has presented

---

[5] Malibu contends that this court previously held that Malibu need only prove that Doe's IP address was used in order to prove Doe's liability. [Dkt 147 at 1.] That is not correct and the partial quotation cited by Malibu is taken out of context. Evidence of a link between an IP address and Malibu's movies may be enough to justify discovery, but it is not enough to prove liability. As Malibu's counsel is aware, the hearing on September 30, 2014 did not involve the standard to prove liability; rather, the issue was whether Malibu could take discovery regarding Doe's work computer as well as his home computer. [Dkt 159.] Malibu has no evidence suggesting that an IP address used by Doe's work computer was in any way involved with Malibu's works. The court concluded that Malibu's effort to take discovery about Doe's work computer without even a link to the IP address used by those computers was "just fishing." [*Id*. at 6.]

evidence of unidentified users on his network as well as other persons in his home during the infringement period. [Dkt 163 ¶¶ 26-30, 60.] Doe testified that during the period of alleged infringement there were a lot of people visiting his home because he and his wife had just had a new child. [Dkt 148-23 at 21.] Although Malibu argues that no one living outside Doe's home had "sufficient access to his Internet to be the infringer" [dkt 147 at 6], Malibu presents no evidence that eliminates the possibility. Doe also testified that when he "check[ed] the router [there was] at least one, another drive connected to my network." [Dkt 148-23 at 101.] He provided MAC addresses and a screen shot showing an unknown router on Doe's network. [Dkt 148-25 at 6; 148-26.] Paige disputes the value of this evidence, saying that it is "irrelevant" if not taken during the time of infringement, and that the screen shot does not "even remotely suggest a WiFi hacker" because MAC addresses can be "spoofed." [Dkt 152-2 ¶¶ 65-69.] The court, however, concludes that it is relevant. *See* Fed. R. Evid. 401. That Doe did not check for access by unauthorized users until after he had notice of this lawsuit is not surprising. The persuasive value of Doe's evidence would be for the jury to determine.

Even considering the disputed declarations, Malibu has failed to demonstrate that there is no genuine question of material fact about whether Doe infringed its works, and, therefore, Malibu's motion for summary judgment is denied.

B.    Has Malibu demonstrated copying of constituent elements of its work that are original?

There is a second reason why summary judgment could not be granted for Malibu based on the evidence before the court. Malibu must show copying of "constituent elements of the work that

14

are original." *Feist*, 499 U.S. at 361.  There is virtually no evidence before the court of what Doe allegedly copied or distributed.

BitTorrent copyright litigation is premised on the fact that BitTorrent software allows the user to download "bits" and assemble them to comprise an entire or significant portion of a digital file.  "After a [BitTorrent] user receives all the bits of a digital file, the BT software reassembles the bits so the reassembled file may be opened and used." *Malibu Media v. Gilvin*, No. 3:13-CV-72 JVB, 2014 WL 1260110, at *1 (N. D. Ind. March 26, 2014).  Malibu's problem in this case is that there is no evidence that Doe actually used BitTorrent software to download Malibu's movies onto his computer.  There is no evidence that Malibu's movies are or were on Doe's computer or storage devices, and no evidence that BitTorrent software was installed on Doe's computer during the infringement period.  Paige specifically looked for evidence of BitTorrent use on Doe's hard drive, as well as any evidence of Malibu's works.  [Dkt 152-2 ¶ 38.]  The most he found was evidence that at some time two devices that are "capable of storing movie files downloaded via BitTorrent" were connected but not produced in discovery.  [*Id*. ¶¶ 44-45.]

Fieser's and Patzer's declarations state that some undescribed "bits" of Malibu's works were detected being distributed from Doe's IP address.  Even assuming for the sake of argument that Malibu could show Doe copied and distributed those bits, Malibu makes no effort to prove that those bits meet the standard for copyright infringement.  "Not all copying, however, is copyright infringement." *Feist,* 499 U.S. at 361.  "*Feist* stands for the proposition that even admitted literal copying is not actionable when limited to unoriginal expression."  4 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* §13.03 [B][2][b], 83-84 (Matthew Bender, Rev. Ed.).

[E]ven where the fact of copying is conceded, no legal consequences will follow

from that fact unless the copying is substantial. Even when there is no dispute about (a) the validity of the plaintiff's copyright, (b) defendant's access to the work, and (c) very strong resemblances between them, the result is only to show probative similarity – but the court may still grant summary judgment to defendant, to the extent that substantial similarity is lacking, as when defendant took only the unprotected elements of plaintiff's work.

*Id*. § 13.03[A], 38.1 (quotations and citations omitted).

Malibu's evidence on the motion does not come close to carrying its burden on this element of infringement. Patzer states that each PCAP shows Doe's IP address distributing "a piece of Malibu Media's copyrighted movie(s)." [Dkt 148-9 ¶ 20.] Fieser says that the IPP software verified that each bit downloaded from the IP address was a portion of a file hash listed on Exhibit A, and that each file hash was verified to be a digital media file containing a motion picture. He viewed each movie listed on Exhibit A side-by-side with the digital media file, and the file was "identical, strikingly similar or substantially similar to the Movie associated with it." [Dkt 148-8 ¶¶ 15-16.] Because both declarations are pro forma, they do not describe what "constituent elements" of Malibu's works Doe allegedly copied. There is nothing in either declaration that would allow the court to conclude that the "bits" and "pieces" captured by IPP's technology as allegedly distributed from Doe's IP address meet the standard of originality justifying a finding that they are protectable elements of the works. Even if the hash value captured in the PCAP corresponds to portion of a digital file that is "identical, strikingly similar or substantially similar to" Malibu's copyrighted work, there is nothing before the court that describes the audio/visual material that is represented by that hash value. Is it the entire movie or is it some portion so small that it would not be identifiable as part of the movie? There is nothing in this record to answer that question.

Doe asked for that information in discovery and moved to compel its production. [Dkt 124.]

16

At a hearing on January 23, 2015, Doe's counsel stated, "Malibu has claimed that they received from our client's IP address a piece of each of the copyrighted works at issue. . . . We have asked for them to identify and produce to us what piece are you claiming you got from our guy, not other pieces that you got from other people, what pieces are you claiming our guy distributed." [Dkt 177 at 4-5.] Malibu's counsel responded that Malibu had produced the MySQL log, as well as a "voluminous" spreadsheet of the hash values, which Malibu had obtained from Excipio. [*Id*. at 6-7.] He said, "[T]hat is the only form that we are able to get the information in." [*Id*. at 7.] Doe's counsel complained that the MySQL log and spreadsheet do not enable counsel to see "what piece did you get from our client and then hold up next to your movie to say that matches, that's an infringing piece of the work." [*Id.* at 8.] Malibu's counsel did not disagree. Rather, he said:

> It is very technical, your Honor. And perhaps the remedy for the issue is for them to have an expert look at the PCAP's, the SQL files in the spreadsheets that we have given them, because that's all we have.
>
> .   .   .
>
> They are trying to get us to interpret that data for them when, first of all, I can't do it, my client can't do it.

[*Id*. at 9.]  Malibu has submitted nothing that would enable the court to do it, either.

Patzer says that, if requested, he could bring the computer files to the trial. [Dkt 148-9 ¶ 26.] That does not demonstrate Malibu's entitlement to summary judgment. *See Winkler*, 2015 U.S. Dist. LEXIS 91305, at *29 (denying summary judgment with respect to works that were not found on defendant's computer notwithstanding Fieser and Patzer declarations).

Malibu's motion for summary judgment is denied.

**IV.  Doe's motions to strike**

Doe moves to strike Fieser's and Patzer's declarations, and the additional portions of Paige's declaration that appeared in  the April 17 and April 20 versions,  and all of Malibu's statements of fact that rely upon them.  [Dkt 160, 161.]  Those motions are granted pursuant to Fed. R. Civ. P. 26(a)(2) and 37(c)(1).

    **A.  Fieser's and Patzer's declarations.**

Rule 26(a)(2)(A) provides: "In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703 or 705."  Fed. R. Evid. 702 relates to "Testimony by Expert Witnesses," that is, "[a] witness who is qualified as an expert by knowledge, skill experience, training, or education."  In contrast, Fed. R. Evid. 701, relating to "Opinion Testimony by Lay Witnesses," provides that a witness not testifying as an expert may testify in the form of an opinion only if it is "not based on scientific, technical, or otherwise specialized knowledge within the scope of Rule 702."

If a witness is to give testimony based on scientific, technical, or otherwise specialized knowledge, Rule 26(a)(2) requires a formal disclosure, notwithstanding any prior disclosure of the witness under Rule 26(a)(1) or the fact that the witness is "already known . . . through prior discovery."  *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004.)  Whether the witness must provide a report as described in Rule 26(a)(2)(B) or a disclosure meeting the standards of Rule 26(a)(2)(C) depends on the nature of the witness.  *See* Rule 26(a)(2)(B).  But there is no doubt that a formal disclosure is required.

18

Malibu never served any Rule 26(a)(2) disclosure of Fieser or Patzer. Malibu now contends that they are "lay witnesses – not experts." [Dkt 167 at 1.] It is clear from the descriptions above, however, that their testimony is based on their "scientific, technical, or otherwise specialized knowledge."

> Lay opinion "most often takes the form of a summary of firsthand sensory observations" and may "not provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events."

*Tribble v. Evangelides*, 670 F.3d 753, 758 (7th Cir. 2011) (*quoting U.S. v. Conn*, 297 F. 3d 548, 554 (7th Cir 2002)). An untrained layman could not provide the testimony in Fieser's or Patzer's declarations.

That conclusion is reinforced by reviewing Malibu's description of its proposed evidence to prove infringement: "The demonstration would merely require the witness to *install TCPDump* so he or she could *read and analyze* the PCAP." [Dkt 40 at 3-4 (emphasis added).] A PCAP, Patzer states, is not a recording of light and sound, it is a computer file consisting of zeros and ones. [Dkt 148-9 ¶ 16.] Patzer's testimony in the declaration requires an ability to read and analyze a computer program that is the result of a proprietary process. As Malibu's counsel admitted at the January 25, 2015 hearing, he cannot do it, his client cannot do it, and Doe would be required to retain an expert to do it. It is not lay testimony.[6]

---

[6] Malibu cites one district court case in which an objection to Patzer's testimony on similar grounds was overruled, *Malibu Media, LLC v. Tashiro,* 1:13-cv-205-WTL-MJD, 2015 WL 2371597 (S.D. Ind. May 18, 2015). That ruling came in the context of a hearing on a motion for sanctions, not a motion for summary judgment, and Patzer's testimony there was limited to "his relationship to IPP; the nature of his business; and the sorts of records he had obtained while working in that business." *Id.* at * 7. Here, however, Patzer's testimony goes beyond laying the foundation for business records.

Fieser's declaration is likewise expert testimony. He monitors the BitTorrent file distribution network to identify the IP addresses being used by infringers. [Dkt 148-8 ¶ 6.] His task is "effectuating, analyzing, reviewing and attesting to the results of the investigation." [Id. ¶ 8.] He uses forensic software and related technology, which he attests was "correctly installed and initiated on a server." [Id. ¶¶ 9 -10.] An untrained layman could not so testify. Fieser's declaration is testimony based on his scientific, technical, or other specialized knowledge.

Any doubt on this question is resolved by the statements of Malibu's counsel at the hearing on January 23, 2015, quoted above. Malibu's counsel also admitted, "It is very complicated. And I'm not going to stand here and say that I understand the technical aspects of it because it is way over my head." [Dkt 177 at 8.] The court then referred counsel to Rule 26(a)(2) and the Seventh Circuit's holding in *Musser* that expert testimony must be the subject of a formal Rule 26(a)(2) disclosure. [*Id.* at 10-13.] The court warned the parties that "this case seems to rely very strongly on technical information, technical testimony, and . . . if that's not sufficiently disclosed, it is not coming in." [*Id*. at 18.] By then it was past the deadline for Malibu's expert disclosures. [Dkt 122.]

At the next status hearing on February 12, 2015, Malibu's counsel referred to the discussion on January 23, 2015 about "whether or not IPP is an expert witness." He stated, "I think that shortly we will be filing a motion to amend our expert witness list based on the concerns that were raised at the last hearing." [Dkt at 4.] Malibu never filed any such motion. Instead, it simply sent Doe's counsel a PDF with Patzer's declaration on March 17, 2015, more than two months after the deadline for Malibu's expert disclosures, a month after Doe served his expert's report, and almost a month after the deadline for Doe to depose Malibu's experts. [Dkt 122.]

Under Rule 37(c)(1), Fieser's and Patzer's declarations are automatically excluded unless

20

Malibu's violation was substantially justified or harmless. *Tribble*, 670 F.3d at 758; *Musser*, 356 F. 3d at 758. The burden is on Malibu to show that its failure was substantially justified or harmless. "The sanction of exclusion is 'automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless.'" *NutraSweet Co. v. X-L Engineering Co*, 227 F.3d 776, 785-86 (7th Cir. 2000) (quoting *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)). The court should consider several factors in deciding whether non-compliance with Rule 26(a) is harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble*, 670 F.3d at 760 *(quoting David v Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Malibu claims that there is no prejudice because Doe has known of the substance of both witnesses' testimony. [Dkt 167 at 7.] Malibu points to its filing on a earlier discovery motion where, it claims, it "summarized the testimony that would be offered by both Tobias Fieser and Michael Patzer." [*Id.*, citing Dkt 40.] In fact, that material would not have informed Doe about the declarations submitted here. In that earlier filing, Malibu said, "Mr. Fieser is the only employee of IPP who *may* testify. His testimony is unnecessary. Therefore, Malibu will *not* likely call Mr. Fieser." [Dkt 40 at 5 (emphasis in the original).]

With that earlier filing, Malibu included a portion of Patzer's testimony from another case (which did not involve this defendant or his counsel) [dkt 40-9] and a declaration [dkt 40-11] that is not "substantively identical" to his declaration here, contrary to Malibu's assertion, [dkt 167 at 7]. The fact that Malibu sent Doe's counsel a PDF of Patzer's declaration on March 17 (two months after its disclosure deadline) demonstrates Malibu's awareness that the earlier information was

21

insufficient.

As noted above, the fact that a witness's proposed testimony might have been known to the opposing party does not excuse a formal disclosure. If Malibu intended to present the Rule 702 testimony of either Fieser or Patzer in this case, it was obligated to make a timely disclosure of the substance of that testimony to Doe. Doe was not required to guess from testimony in another case what Fieser or Patzer might say if Malibu in fact called either to testify here. On the contrary, from the absence of a formal disclosure, Doe was entitled to assume that Malibu would not call either Fieser or Patzer to testify or to submit their declarations on summary judgment. Doe "should not be made to assume that each witness disclosed by [Malibu] could be an expert witness at trial." *Musser*, 356 F.3d at 757.

Had Fieser or Patzer been disclosed pursuant to Rule 26(a)(2), there are steps that Doe could have taken. *See Musser*, 356 F.3d at 757-58. "Without proper disclosures, a party may miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report." *Tribble*, 670 F.3d at 759-60. Although Malibu argues that reports under Rule 26(a)(2)(B) would not have been required, there is a good possibility that such reports would have been required, or at least Doe would have had a chance to argue that they were required.[7]

The testimony of Fieser and Patzer is critical to Malibu's case. Without their declarations,

_____

[7] *See* Fed. R. Civ. P. 26(a)(2)(B): report required by witness who "is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fieser states that he is an employee of IPP, Malibu's forensic investigator, whose work includes "attesting" to the results of the forensic investigation for which Malibu hired IPP. [Dkt 148-8 ¶¶ 4,7-8.] Although Patzer states that he was not paid anything by Malibu for his declaration, he licenses his proprietary system to IPP. The nature of his declaration, as well as his testimony in other cases suggests that he has a regular practice of providing testimony for Malibu. Doe would have had an opportunity to explore the nature of Patzer's compensation.

there is no evidence linking Doe or Doe's IP address to Malibu's work. The failure to disclose them under Rule 26(a)(2) was not harmless. *See Tribble*, 670 F.3d at 761 (stating that failure to make Rule 26(a)(2) disclosure not harmless where witness's testimony was critical to party's theory of the case). Weighing heavily in favor of exclusion is the fact that the court drew Malibu's attention to the need for formal expert disclosures at the hearing on January 23, 2015, specifically referring to the *Musser* decision. Malibu's counsel frankly acknowledged that the technology involved in IPP's work was beyond his or his client's understanding, which clearly suggested that it was testimony an untrained layman could not make. At the following hearing, Malibu's counsel said Malibu would move for leave to disclose additional experts. That was before the deadline for Doe to depose Malibu's experts had passed and before Doe's expert disclosures were due. If Malibu had, in fact, moved for and been given leave to serve additional expert disclosures even at that late date, the schedule could have been adjusted to allow Doe appropriate time to deal with those disclosures. Malibu did not so move. As a result, expert discovery closed with Paige as Malibu's sole disclosed expert witness, and a schedule for dispositive motions was set. Having been informed by the court that there was a risk of exclusion, Malibu simply decided to take the risk.

That Malibu ignored the court's admonition is evidence of at least willfulness, if not bad faith. "Disagreement with [the court's] ruling or a belief that such testimony would be lay and not expert opinion (or no opinion at all) is not a justification; at best, it's just a misunderstanding of law." *Tribble*, 670 F.3d at 760. The Advisory Committee notes to Rule 37 state that, even in a case of a pro se litigant, "exclusion would be proper if the requirement for disclosure had been called to the litigant's attention by either the court or another party." Fed. R. Civ. P. 37 Advisory Committee's Note, 1993 Amendment, Subdivision (c).

23

Accordingly, the court finds that Malibu's failure to serve Rule 26(a)(2) disclosures regarding Fieser and Patzer was not substantially justified or harmless, and their declarations are stricken, as are Malibu's statements of fact that rely on their declarations.

B.     The additional portions of Paige's April 17 and April 20 declarations.

Doe's motion to strike the additional portions of Paige's April 17 and April 20 declarations is also granted. As described above, Paige's original declaration was dated January 9, 2015, the final date for Malibu's expert disclosures. Doe deposed Paige on February 17, 2015. At the conclusion of his deposition, Paige stated that the opinions set out in his January 9 declaration were complete and there was nothing he wanted to add. [Dkt 160-2 at 41.] The April 17 and April 20 declarations, however, add more than a dozen paragraphs expressing, for example, his opinion that "Defendant is the infringer," opinions disputing Doe's contention that an unknown device accessed his router, and an opinion that, based on Doe's computer expertise, Malibu's works were either on a computer Doe failed to produce or one he did produce that was modified to make the works undetectable. [Dkt 148-13 ¶¶ 60-68; 152-2 ¶¶ 71-75.]

Malibu claims that these additional opinions – which were tendered only as exhibits on summary judgment briefing after all expert discovery is closed – are "timely supplementation" under Rule 26(e). [Dkt 168 at 2.] According to Malibu, they "clarify and complete" his prior opinions. [*Id*. at 1.] In fact, the April 17 declaration goes into a completely different area of expert testimony: responding to Doe's contention about the unknown device. All of the facts about that contention, including Doe's deposition and the screen shot that Doe produced, were explored during fact discovery. Paige's January 9 declaration [dkt 161-1] did not mention Doe's contention about the

24

unknown devices or the screen shot he produced. Doe had no opportunity to depose Paige on those opinions or to expand Neville's report to respond. Contrary to Malibu's suggestion, the additional paragraphs do not respond to – or even refer to – Neville's report. Malibu never sought leave to serve a rebuttal report to counter Neville's opinions. There is no reason why all of Paige's opinions could not have been disclosed on January 9. The additional paragraphs in the April 20 declaration have little value because they are essentially argument that because Doe is a "sophisticated computer user," Malibu's works must have existed on his computers at one time. [Dkt 152-2.] But, again, Doe's counsel had no opportunity to depose Paige on the basis for his statements.

Malibu's effort to add new opinions to Paige's original declaration is gamesmanship under the guise of supplementation. Courts have regularly stricken such purported supplementation of an expert report that appears on summary judgment briefing. 8A Charles Alan Wright, Arthur R. Miller & Charles L. Marcus, *Federal Practice And Procedure* §2049.1, at 319-20 (3d ed. 2010) (collecting cases).

> Supplementation of an expert report permits a party to correct inadvertent errors or omissions. Supplementation, however, is not a license to amend an expert report to avoid summary judgment. Courts distinguish "true supplementation" (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by "supplementing" an expert report with a "new and improved" expert report.

*Gallagher v. Southern Source Packaging, LLC.,* 568 F. Supp. 2d 624, 630-31 (E.D.N.C. 2008).

Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert report." *Beller ex rel. Beller v. U.S.*, 221 F. R. D. 696, 701 (D.N.M. 2003) (citation omitted). To allow additional substantive opinions to an expert report under the guise of "supplementation" after the deadline for expert discovery would "create a system

25

where preliminary reports could be followed by supplementary reports and there would be no finality." *Id.*

Accordingly, the additional paragraphs of Paige's April 17 and April 20 declarations are stricken, as are Malibu's statements of fact that rely on those paragraphs.

**V.      Doe's motion for summary judgment.**

Without the evidence of Fieser's and Patzer's declarations, there is no evidence linking Doe or even his IP address to Malibu's works. Paige's evidence, which depends entirely on the finding of IPP using Excipio's system, does not contain any evidence based on his personal knowledge that Doe copied or distributed any of Malibu's works. Doe's motion for summary judgment is, accordingly, granted.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for Summary Judgment [147] is denied; Defendant's Motion for Summary Judgment [144] is granted; Defendant's Motion to Strike Certain Portions of Plaintiff's Statement of Undisputed Material Facts [160] is granted; and Defendant's Motion to Strike Portions of Plaintiff's LR 56.1(b)(C) Statement [161] is granted. Judgment is entered in favor of the defendant and against the plaintiff.

IT IS SO ORDERED.

Geraldine Soat Brown
United States Magistrate Judge

February 8, 2016